## HARTJE *et al.* *v.* VULCANIZED FIBRE CO.

*(Circuit Court, D. Delaware. October 18, 1890.)*

1. **ESTOPPEL—IN PAIS—SILENCE.**
   The owners of three patents assigned the right to their use to defendants, reserving to themselves a stipulated royalty. To successfully carry on the business, defendants purchased a patent owned by one Hanna, which, by a supplemental contract, became the joint property of defendants and the owners of the three original patents. Afterwards the father of one of the owners of the three original patents acquired all of the latter's rights therein, and later sold the same to defendants. *Held,* that by managing this sale, and by knowingly permitting defendants to consummate it under the belief that they were acquiring his interest in all the patents, without informing them that no interest in the Hanna patent had ever passed to his father, the son was estopped from asserting any rights under that patent as against defendants.

2. **TRUSTS—PROPERTY LIABLE TO ATTACHMENT.**
   Where a *cestui que trust* has conveyed all its interest under the trust to others by instruments *prima facie* competent, and where the *bona fides* of the transfer and of the trust has been unsuccessfully assailed on the ground that it was without consideration, and made to defraud creditors, and that both trustee and original *cestui que trust* were identical, and insolvent when the assignment was made, a debtor in whose hands the individual assets of the trustee have been attached cannot refuse to pay to him a trust debt.

Bill in Equity by August Hartje, trustee of Waldemar A. Schmidt, and of Henrietta Hartje and said Waldemar A. Schmidt and John H. Mueller, and said August Hartje and said Henrietta, his wife, in right of said Henrietta, against the Vulcanized Fibre Company of Wilmington.

*M. A. Woodward* and *Henry C. Conrad*, for complainants.

The assignment from Schmidt to Hartje was for three named patents. It must appear that the actor, having no means of knowledge, was induced to do what he would not otherwise have done, and that injury would ensue from a permission to allege the truth. *Com.* v. *Moltz*, 10 Pa. St. 527; Bigelow, Estop. 9, 480; Herm. Estop. § 325 *et seq.* If both parties have equal means of knowledge there can be no estoppel. *Hill* v. *Epley*, 31 Pa. St. 331; Bigelow, Estop. §§ 289, 290, *et seq.* 1 Story, Eq. Jur. § 191.

*Edward G. Bradford,* for respondent.

Schmidt is either equitably estopped or has parted with his interest. *Whitney* v. *Burr*, 115 Ill. 289, 3 N. E. Rep. 434; Walk. Pat. §§ 274, 285.

WALES, J. This bill is filed for a discovery, an accounting, and for a decree to compel the payment of royalties claimed to be due and payable for the use of certain patent-rights, which were formerly the property of the complainants, and by sundry mesne assignments came into the possession of the defendant, subject to the payment of the royalties now sued for. The patents referred to cover improvements for treating paper pulp and vegetable fibre substances in the manufacture of what are known as "vulcanized fibrous articles." The pleadings put in issue the title and ownership of each one of the complainants in or to the royalties which are the subject-matter of the present suit, and by the stipulation of counsel this is the only question now to be decided, leaving the scope and limitation of any account that may be decreed to be settled hereafter.

The answer denies that Waldemar A. Schmidt had any legal or equitable right or interest in any of the patents or royalties mentioned in the bill, at the time of bringing this suit, and alleges that what was known as the Schmidt interest in the patents had been assigned to the defendant before that time. The evidence shows that Waldemar A. Schmidt derived his right and interest in the most important and valuable of the patents by and under a declaration of trust made by August Hartje, that the latter held the patents therein mentioned in trust for the Pittsburgh Manufacturing Company and Waldemar A. Schmidt in equal shares. It further appears that August Hartje, acting as trustee, and with the consent of his *cestuis que trustent*, sold and assigned the right to use the trust patents to third persons, through whom they came into the possession of the defendant, on terms and conditions set out in a contract of assignment dated June 30, 1873. This contract fixed the rate of royalties to be paid for the use of the trust patents, and provided that any improvements in said inventions, made by the assignees, should be secured and patented for the joint benefit of the contracting parties. The patents thus assigned were No. 61,267, dated July 12, 1867; No. 113,454, dated April 4, 1870; and No. 114,880, dated May 16, 1871. The contract of June 30, 1873, was supplemented by another one between the same parties, made the 20th of November, 1873, and by which the first contract was modified and altered. The assignees of the trust patents having found it necessary, in order to secure greater protection in their business,

to buy other patents from Edmund S. Hanna, it was agreed by the supplemental contract that all patents which had already been purchased from Hanna, or which should thereafter be purchased from him, should be the joint property of the parties to these two contracts. E. S. Hanna, on November 14, 1873, had assigned and transferred to parties under whom the defendant claims, all patents and parts of patents held by him either as inventor or assignee, and all other patents for which he may make application thereafter, any of which shall relate to the methods of treating paper, paper pulp, or other vegetable fibrous substances, or any articles made from these substances, or any mechanical devices for working the same, reserving certain royalties to be divided equally between the said Hanna, August Hartje, trustee, and the assignees of the said patents. On June 7, 1880, Waldemar A. Schmidt assigned to A. T. Schmidt (his father) "all my interest, right, title, and claim of, in, and to those three patents," etc., referring to the trust patents, and specifying their numbers and dates. On the 15th of October, 1880, A. T. Schmidt assigned his interest in the three trust patents to the defendant for and in consideration of certain money payments, stated in the agreement between them of that date. On March 26, 1884, in the court of common pleas, No. 1, of Allegheny county, Pennsylvania, in the suit of A. T. Schmidt, assignee of W. A. Schmidt, against August Hartje, it was adjudged and decreed, *inter alia*, as follows:

"That the trust heretofore existing as set forth in the bill of complaint be, and the same is hereby, declared to be determined and fully ended; and that the said August Hartje, by good and sufficient assignments or instruments of writing, convey the one-half interest in the patents held by him in trust as set forth in the bill to the said plaintiff."

On November 10, 1884, August Hartje, in obedience to the above decree, assigned to A. T. Schmidt the undivided one-half interest in the trust patents. On the 14th of April, 1885, A. T. Schmidt, by way of further assurance, again assigned all his rights and claims in the trust patents to the defendant, on the payment of the consideration money mentioned in the agreement of October 15, 1880. These contracts and assignments complete the chain of defendant's title to what had been the Schmidt interest in the trust patents, and show that W. A. Schmidt has no right to sue for any royalties which may be due on them. But his counsel contend that he has never assigned or parted with his interest in the Hanna patents, on which royalties are due and payable, and that for a discovery and an account in respect to them he can maintain the present suit. It is true that Waldemar A. Schmidt, by his assignment to his father, transferred nothing more than his interest in the three trust patents, and that the father could not assign to the defendant any more than he had received; but the defendant charges that Waldemar A. Schmidt, in the course of the negotiations for the sale of the Schmidt interest, induced the defendant to believe that it was buying the Schmidt interest in all the patents, and that he is thereby estopped from now asserting any right in them. By the agreement of October 15, 1880, between A. T. Schmidt and the defendant, the con-

sideration for the assignment of the trust patents was to be paid partly in cash and the balance on the rendition of the decree establishing the right of A. T. Schmidt to the one-half interest in them.    The trust having been determined, and the trustee having made the assignment, as ordered by the decree, the defendant was called on to fulfill his part of the agreement by paying the balance of the purchase money; and it is in the negotiations which preceded the final payment, and which were conducted by W. A. Schmidt in behalf of his father, that the evidence must be found to support the defendant's charge.    It is clear enough that the defendant's officers and attorneys entertained the belief that in closing the transaction of April 14, 1885, they were obtaining the whole Schmidt interest, and it is only necessary to inquire what W. A. Schmidt did or said, or designedly left undone or unsaid, to produce that belief. It appears that at one time he presented a vague claim of $500 on account of some of these patents, which was disallowed, and the matter was dropped.    Mr. Dalzell, one of defendant's counsel, at Pittsburgh, testifies:

"The transfer of April, 1885, was made in further assurance of the title to the patents as originally made by A. T. Schmidt to the Vulcanized Fibre Company.    I have no recollection of ever having heard, from my first connection with this business up to within a very short time, any suggestion or pretense that the entire Schmidt interest—by which I mean all the interest outside of that held by Hartje as trustee for himself and the manufacturing company— was not owned by A. T. Schmidt.  *  *  *  I know of the payment of the last installment of purchase money by the Vulcanized Fibre Company to A. T. Schmidt, and I understood when I paid that money and took the receipt that I was paying it for the entire Schmidt interest, and by the 'Schmidt interest' I mean as I have defined heretofore.    Nothing was said by Mr. W. A. Schmidt, with whom I dealt, that would have led me to suppose anything else."

Waldemar A. Schmidt testifies on cross-examination:

"I was cognizant of the conveyance of all of A. T. Schmidt's interest in the Schmidt interest referred to in the question.  *Question.*  Do you not now understand, and did you not then understand, that the Vulcanized Fibre Company, through its counsel, was dealing or negotiating with your father for the transfer to it of the whole Schmidt interest?  *Answer.*  My offer having been refused by Mr. Hampton on the ground that I had nothing, and having received no intimation of a change of opinion on their part, it is possible that I thought they thought they had the whole interest; but I differed with them then, and do so now differ."

W. A. Schmidt never renewed his claim for the $500, and allowed the negotiations to go on until the transaction was closed, and it was supposed by the defendant that it had acquired the complete title to the Schmidt property in the patents.    If he had a title or claim to any portion of the patents or royalties he remained silent when it was his duty to speak, and his conduct affords a proper case for the application of the rule of equitable estoppel, which is nowhere more clearly stated than by Chancellor BATES in *Marvel* v. *Ortlip*, 3 Del. Ch. 9, as follows:

"Where one by his acts, declarations, or silence, where it is his duty to speak, has induced another person, in reasonable reliance on such acts or declarations, to enter into a transaction, he shall not, to the prejudice of the person so misled, impeach the transaction."

The same principle is also recognized in *Morgan* v. *Railroad Co.*, 96 U. S. 720, where the court say: A person—

"Is not permitted to deny a state of things which by his culpable silence or misrepresentation he has led another to believe existed, and who has acted accordingly upon that belief. The doctrine always presupposes error on one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage."

A court of equity will not compel the purchaser of property, under such circumstances, to buy any portion of it over again from a person who stood silently by at the time of the sale and made no sign, although he knew that the purchaser believed that he was buying the property free from all claims. Much less will the court lend its aid to a claimant of such property who personally managed the sale and designedly permitted the purchaser to believe that he was getting a perfect title. Common honesty and fair dealing required that the complainant should notify the defendant, or its attorneys, that the assignment of A. T. Schmidt was of a part, and not of the whole, Schmidt interest; but, as he chose to adopt a different course, and to conceal what he should have made known, he cannot now be allowed to take advantage of his own wrong in maintaining this suit.

The right of the other complainants to bring the suit is disputed on the ground that August Hartje is the sole and individual owner of the royalties which he had formerly held as the trustee of the Pittsburgh Manufacturing Company, and that he should have sued in his individual capacity, and not as the trustee of his wife or of John H. Mueller. The defendant admits its accountability for the royalties which Hartje held for the benefit of the Pittsburgh Company, and by its answer alleges that it fully accounted for and paid them to the trustee of that company up to the 12th of July, 1885, on which day all the property, rights, and credits of August Hartje in the possession of the defendant were attached at the suit of A. T. Schmidt against the said Hartje in the superior court of Delaware for New Castle county. The defendant does not deny its obligation to pay the royalties, but asks for its own security to be directed by a decree of this court how and to whom such payment shall be made. The complainants' Exhibits G and H set forth the written instruments by which J. H. Mueller and Henrietta Hartje became the beneficiaries of the property in the place of the Pittsburgh Company. These instruments, two in number, bearing date, respectively, April 8, 1881, and May 11, 1881, are in due form, and are *prima facie* proof that their purpose was, as expressed, to put Mueller and Mrs. Hartje "fully in the place of the Pittsburgh Manufacturing Company under and in relation to the whole subject-matter of the trust respecting said patents, and recognized by said agreement, of which August Hartje was and remains trustee." The defendant has assailed the *bona fides* of the new trust by charging that it was created without consideration and for the purpose of defrauding Hartje's creditors, and is therefore void. It is also charged that August Hartje and the Pittsburgh Company were identical,

and that both were insolvent at the time when these complainants undertook to create the second trust. Without discussing the testimony produced by the defendant in relation to these charges, it is sufficient to say that the evidence does not support them. Mueller and Mrs. Hartje are the successors in interest to the Pittsburgh Company, and are entitled to have the royalties due on the patents paid to their trustee. The creditors of Hartje can prosecute their claims, in their own names, here or elsewhere. This case is decided on its own merits as they appear from the record evidence. The bill is dismissed as to Waldemar A. Schmidt, and sustained as to the other complainants, and a decree will be entered accordingly.

McKENNAN, J., concurs.