## Morgan *v.* Railroad Company.

1. A party is not permitted to deny a state of things which his conduct or misrepresentations led another to believe existed and to act in accordance with that belief.

2. The doctrine of estoppel *in pais* always presupposes error on one side, and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage.

3. No particular form of words is required to the validity of a dedication. The assent of the owner, and the use of the premises for the purposes intended by the appropriation, are sufficient, and estop him from revoking the dedication.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This suit was commenced by a bill filed by Morgan against the Chicago and Alton Railroad Company. It involves the ownership of two strips of land adjoining that over which that company has the right of way, and forming part of its depot grounds in the town of Dwight, in the State of Illinois, which it claims to own as grantee of all the rights and property of the Chicago and Mississippi Railroad Company.

The company filed a cross-bill, wherein it set up the dedication of the property to the public use, and that Morgan was estopped *in pais* from denying it. The court, upon hearing, dismissed the original bill, and decreed in favor of the company on the cross-bill. Morgan thereupon appealed here. The remaining facts are stated in the opinion of the court.

*Mr. Hamilton Spencer,* for the appellant, cited *McWilliams* v. *Morgan,* 61 Ill. 89; *Todd* v. *Pittsburgh, Fort Wayne, & Chicago Railroad Co.,* 19 Ohio St. 514; *Gentleman* v. *Soule,* 32 Ill. 271; *Kelly* v. *City of Chicago,* 48 id. 388; *Rees* v. *City of Chicago,* 38 id. 322; *Jacksonville* v. *Jacksonville Railway Co.,*

67 id. 540; *Illinois Insurance Co.* v. *Littlefield et al.*, id. 368; *Warren* v. *The President, &c. of the Town of Jacksonville*, 15 id. 236.

Mr. John P. Wilson, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

During the years 1853 and 1854, the Chicago and Mississippi Railroad Company was engaged in locating and building a railroad from Joliet to Alton, in the State of Illinois. The appellant and Spencer and Lathrop were in the service of the company as engineers. Kersey H. Fell was employed to obtain the right of way for the road.

The line of the road was located by Oliver H. Lee, the chief engineer. The parties first named were permitted to locate the stations between the principal points. This was to be done in conformity to the interests of the company.

Spencer says, in his testimony, "My understanding with Mr. Lee was that the railroad company should have ample grounds for the transaction of their business where we located the stations."

With the view of locating one of the stations and laying out a town, four contiguous parcels of land of forty acres each were bought from the United States: one by Morgan, Spencer, and Lathrop, each severally; and the other by Kersey H. Fell, and his brother, Jesse W. Fell.

At the time of the entry of the lands, it was the intention of the parties to locate the depot at the centre of the four tracts. The line of the road was fixed some distance east of that point. This caused the depot to be located upon the tract belonging to Morgan.

Prior to the construction of the road, the other parties conveyed their three tracts to Morgan, under an agreement that all the parties should have joint, instead of separate, interests in the proposed town plat, and that Morgan, as trustee, should lay out the town, and sell and convey the lots. The proceeds were to be divided among the parties according to their original ownership respectively of the lands. On the 6th of August, 1853, Morgan conveyed to the railroad company fifty feet in width on each side of the centre of its roadway through the

several tracts before mentioned. The deed required the company, among other things, to "keep station-houses and other necessary depot buildings on said first-mentioned tract." The tract first mentioned was the one originally entered by Morgan. On the 30th of January following, he laid out the contemplated town plat. The town was called Dwight. The plat shows a strip of land marked " depot," one thousand and four feet long and two hundred feet wide, with the line of the railroad through the centre. There is nothing indicating the previous conveyance of a hundred feet in width through the centre to the railroad company. The premises in controversy are fifty feet in width on each side of this hundred feet.

Morgan sold a part of the town lots, and accounted for the proceeds. In 1855, partition was made of the unsold lots, without reference to the original ownership of the several tracts as entered, and Morgan conveyed accordingly to the other several parties in interest. No notice was taken of the premises in dispute. The business of the trust was thus finally closed.

In 1853 or 1854, Morris, a draftsman in the office of the company, made a map, he says, " for the purpose of showing the company's land, as required for right of way and operating purposes, through different subdivisions of United States surveys, to be a permanent record for the use of the company, showing its property along the line of the road." Morgan and Spencer furnished the materials for the work. It is affixed to his deposition, and marked Exhibit 1. Being asked whether Morgan and Spencer saw it, he answered, " I have no doubt they saw it frequently, as those gentlemen were in the habit of coming into the office where I made this map." The map represents the premises in question as they are represented on the town plat. The diagram has the line of the railroad in the centre, and is marked " depot ground." The data for the map were furnished before the iron was laid upon that part of the roadway. Spencer testified that he supposed the making of the town plat vested a sufficient title in the company. He added, " Had I not thought so, it would have been my duty as engineer of that division to have seen that the company had a proper deed." He said, further, that Morgan occupied the same relation to the company as himself, and

was clothed with the same duty. When the partition was made, he regarded the premises as belonging to the railroad company.

At the time the unsold lots were divided, Jesse W. Fell had the same understanding as to the premises. He says, "Looking at the interests of the parties as affected by the location of the depot, I have always supposed that good faith on our part demanded that these strips should belong to the railroad."

When the partition deeds were made, he supposed that all the property not dedicated had been divided. Morgan himself was examined as a witness. Speaking of the premises, he said, "I set them apart with a view to the ultimate needs of the railroad company at this station," and that it was his intention to convey to the company for a nominal consideration, if they faithfully performed their covenants in his deed for the hundred feet; but that he never had any thought of dedicating the property. He insisted that his interests had been largely sacrificed by the delinquencies of the company touching the covenants.

In 1856 or 1857, he said, "He had given the road the right of way, one hundred feet through the entire land, and fifty feet more on each side for a thousand feet long; and they on their part were to build depot buildings and crossings, and keep them up for all time to come."

At one time the company had a house on the premises used for boarding the laborers working on the road. Morgan claimed that this "was not in compliance with the terms of the grant made to the railroad company." He said that, if the company was allowed to cover the premises with Irish shanties, it would prevent the sale of a corresponding number of lots, and that he should require the house to be removed, which was accordingly done. This occurred in 1860 or 1861. In 1858 or 1859, he sold a corn crib upon the premises, but asserted no title to the ground on which it stood.

In 1867, he said to the village attorney of Dwight, "It was my intention that they" (the company) "should have those lands; and they would have had them had they behaved themselves properly, and had done as they agreed to on their part."

From 1854 to 1863, passengers and teams constantly crossed

· the strips, for the purpose of reaching the depot  In 1863, the Chicago and Alton Railroad Company, which had become the successor to all the rights of the Chicago and Mississippi Company, had a track or tracks on the western strip. Both strips had been and were used for various purposes connected with railroad traffic, and several structures had sprung up on them. One of them was a grain elevator, erected under a license from the railroad company. A street thirty feet in width, extending across both strips, was laid out in 1873. Before that, the depot could not have been reached from any direction without crossing private property, if the strips were such, or taking the hazards of passing along the roadway of the company for a distance of five hundred feet. The strips were therefore indispensable to the use of the depot when it was located and built.

From the time of recording the town plat up to the year 1867, no taxes were paid on the premises by either party. Morgan claimed no rents until 1865; he received none until 1867; and he made no effort to sell any part of the property until January, 1872.

The appellee insists that the record discloses a case of estoppel *in pais*, and that the appellant is thereby barred from maintaining the claim which he seeks to enforce in this litigation. The principle is an important one in the administration of the law. It not unfrequently gives triumph to right and justice where nothing else could save them from defeat. It proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard to speak when he ought to be silent. *The Bank of the United States* v. *Lee*, 13 Pet. 107.

He is not permitted to deny a state of things which by his culpable silence or misrepresentations he had led another to believe existed, and who has acted accordingly upon that belief. The doctrine always presupposes error on one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage. *Merchants' Bank* v. *State Bank*, 10 Wall. 604.

The rule has been settled in Illinois, where this case arose,

in accordance with these views. In *Baker* v. *Pratt* (15 Ill. 568), the court said, " A verbal statement is sufficient, where the party has made an admission which is clearly inconsistent with the evidence he proposes to give or the title or claim which he proposes to set up, and the other party has acted upon the admission, and will be injured by allowing the truth of the admission to be disproved." In the case of *Mills* v. *Graves* (38 Ill. 455), it was said, " Where a party stands by and sees another acting to his injury, and the owner declares that he has no claim, equity will not permit him afterwards to assert his title to the injury of the person he has thus misled." See, also, *The People* v. *Brown et al.*, 67 Ill. 435 ; *Knoebel* v. *Kircher*, 33 id. 308 ; *Smith* v. *Newton*, 38 id. 230 ; *International Bank* v. *Bowen*, 80 id. 541 ; and *Higgins* y. *Ferguson*, 14 id. 269.

The facts developed in the evidence clearly establish this defence. Briefly stated, they are the advantages given to the appellant and his associates in the location of the stations ; the agreement that the railroad company should have ample ground in all such cases for its purposes ; the designation of the premises on the town plat by the word " depot ;" the fuller designation of a like diagram of the premises on the map made for the railroad company ; the furnishing of the data for that map by the appellant and his associate, Spencer ; the intent of Spencer and Fell that the premises should belong to the corporation, and their belief that the title had vested accordingly ; the non-payment of taxes by the appellant for so long a period ; his non-claim, and his repeated declarations during that time that the property belonged to the railroad company ; the fiduciary relation of the appellant and his associates ; and, lastly, the location and building of the depot where it was placed. As is well remarked by the counsel for the appellee, it is incredible that the depot would have been put there if any doubt had been entertained as to the ownership by the company of property so vital to its beneficial use. It would also have been a gross fraud on the part of the appellant, who was then in the service of the company as an engineer, to stand by in silence and see it erected under such circumstances.

Whether the estoppel here, as in cases of estoppel by deed, passed the legal title by inurement, it is not necessary to con-

sider. In either view, it is alike fatal to the appellant's claim. The authorities upon the subject are not in harmony. *Favill* v. *Roberts,* 50 N. Y. 222; *Doe, ex dem. McPherson,* v. *Walters,* 16 Ala. 714; *Brown* v. *Wheeler,* 17 Conn. 345; Bigelow on Estoppel, pp. 534, 537.

The bar of the Statute of Limitations confers a positive title. *Leffingwell* v. *Warren,* 2 Black, 599.

It is also insisted, in behalf of the appellee, that the premises in question were dedicated by the appellant to the railroad company. This question arises under the twenty-first section of chapter 25 of the Revised Statutes of Illinois of 1845. The provisions of the statute are peculiar. It declares, touching town plats, that the plat or map, when executed and recorded as required, "and every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted on such plat or map," shall be deemed a sufficient conveyance of such parcels of land to vest a fee-simple title, and shall be considered a general warranty against the donor and his heirs to the grantee, for his benefit, "for the uses and purposes therein named, expressed, or intended, and for no other use or purpose whatever." Four classes of parties are named who may be the recipients of the donation: 1. The public; 2. Any individuals; 3. Any religious societies; 4. Any corporations or bodies politic. The purposes of the grant are not required to be set forth, nor is there any limitation as to what they shall be. The power and will of the donor are unfettered. The provisions are simply a mode of conveyance which the grantor may pursue, if he chooses to do so. The language of the statute is clear and explicit. There is no room for doubt. The case is one in which the rule applies, that there shall be no construction where there is nothing to construe. Dwarris, Statutes, pp. 143, 144. There can be no doubt of the power of the legislature so to provide.

Was the intention of the appellant to dedicate the premises to the railroad company for its use for depot purposes, as claimed, "named, expressed, or intended"? Either, as to the use, is, according to the statute, sufficient.

The facts to which we have adverted in the previous parts of

this opinion seem to us conclusive upon the subject. The question must be resolved in the affirmative. If this view be correct, the legal title, by virtue of the statute, passed to the corporation with the right of user as to the premises for all depot purposes, but for none other.

"No particular forms of words is required to the validity of a dedication. The dedication may be made by a survey and plat alone, without any declaration, either oral or on the plat, that it was the intention of the proprietor to set apart certain grounds for the use of the public. An examination of the cases referred to on the argument will show that dedications have been established in every conceivable way by which the intention of the dedicator could be evinced." *Godfrey* v. *The City of Alton*, 12 Ill. 29.

"The question whether a person intends to make a dedication of ground to the public for a street or other purpose must be determined from his acts, and statements explanatory thereof, in connection with all the circumstances which surround and throw light upon the subject, and not from what he may subsequently testify as to his real intent in relation to the matter." *The City of Columbus* v. *Dahn*, 36 Ind. 330.

All that is required is the assent of the owner, and the use of the premises for the purposes intended by the appropriation. The law considers the owner's acts and declarations as in the nature of an estoppel *in pais* and precludes him from revoking the dedication. *City of Cincinnati* v. *The Lessee of White*, 6 Pet. 431; *Holden* v. *Cold Spring*, 24 N. Y. 474.

These authorities apply alike to all the dedications authorized by the statute.

The subject of dedication, in all its aspects, was fully and ably considered in *Rowan's Executors* v. *Town of Portland*, 8 B. Mon. (Ky.) 232. It is sufficient to refer to the case.

Upon the grounds, both of estoppel and dedication, we hold the decree of the Circuit Court to be correct.

*Decree affirmed.*