## TULSA CREAMERY CO. v. TULSA MILK PRODUCTS CO-OPERATIVE ASS'N, Inc.

No. 21921.   Nov. 26, 1935.

52

Hulette F. Aby, William F. Tucker, Frank Settle, and Wm. J. B. Myres, for plaintiff in error.

Roy F. Ford and S. J. Montgomery, for defendant in error.

WELCH, J., The purpose of this action, commenced in the trial court January 4, 1930, was to obtain an injunction restraining the defendant, Tulsa Creamery Company, from purchasing its milk supply from any other person than the plaintiff, Tulsa Milk Products Co-Operative Association, Inc.

For some time prior to December 30, 1929, the plaintiff had furnished and sold milk to the defendant pursuant to a written contract. One of the purposes of the contract was to bind defendant to purchase all its milk supply from plaintiff, and it contained such a provision. However, during the above period the plaintiff was not bound to furnish defendant with its full milk requirements, except only in so far as plaintiff was able to do so. At any rate, for a period the plaintiff did furnish and sell defendant a large supply of milk. The contract provided for regular settlements for milk furnished at fixed intervals. There was some delay on defendant's part in making payments therefor, and from plaintiff's stand-

point their dealings were unsatisfactory, and in fact defendant breached the contract in failing to make prompt payments on the due dates.

The contract gave the plaintiff the privilege of withholding the supply of milk in case of the violation of the contract by defendant, until such violation ceased. The contract also gave plaintiff the privilege of requiring the defendant to give plaintiff "acceptable security which shall secure the payment of milk or milk products obtained from party of the first part," and there was provision that in case of failure to give such security the plaintiff "if they so elect, may terminate the delivery of all milk. * * *"

In December, 1929, the plaintiff demanded of the defendant such security, but the defendant was unable to give it. Thereafter, on December 30, 1929, the plaintiff exercised its option and terminated the delivery of any milk to defendant. The defendant continued to buy milk from other sources, necessary in the conduct of its business, and four or five days later this action was commenced.

So that the plaintiff, acting under the permissive provisions of the contract, refuses to furnish milk to the defendant, and by this action seeks to invoke the equitable power of the court to prevent defendant acquiring from any other source the milk necessary to carry out its business of dealing in creamery products.

The defendant owns and operates an extensive plant, worth many thousands of dollars, and since the plaintiff has exercised its contracted option to "terminate the delivery of all milk" for failure of the defendant, on account of inability, to furnish "acceptable security," the granting of the injunctive relief sought would merely operate to close the defendant's plant and to destroy its business.

It is a general rule that courts, in the exercise of their equitable powers, may in proper cases enforce contracts by enjoining violations of the terms of contracts, but that rule is subject to limitations. The power of the court in such cases should be directed along such channels as would tend to bring about the full performance of the contract. Such power should not be used merely to punish for a violation of the terms of a contract. See 14 R. C. L. pages 381-384, and Williston on Contracts, vol. 3, sec. 1451.

The granting of the injunctive relief here sought would not result in the carrying out

of the primary plan of the contract, that is, the sale of milk by the plaintiff and the purchase of the needed supply by defendant, for the record shows that the defendant, through inability, failed to furnish the "acceptable security" without which the plaintiff would not furnish defendant any milk.

The closing of defendant's business by injunction would benefit plaintiff but little, if any at all. If it be true that the closing of defendant's business by injunction would benefit plaintiff in that it would destroy that much of the outlet of those producing milk in competition with plaintiff, that benefit would be quite small as compared to the injury to defendant in the destruction of its business enterprise.

Many decisions and text statements affirm it to be the duty of the court in considering an application of equitable power by injunction, in a proper case, to take into account the question of comparative injury. See 32 C. J. 77; 14 R. C. L. 357-360, and in McCarthy v. Bunker Hill, etc., 92 C. C. A. 259, 164 Fed. 927, where an injunction was sought to prevent violation of the terms of a contract, it was said, in substance, that prominent consideration should be given to the comparative injury which would result from the granting or refusal of the injunction there sought. See, also, Malinoski v. McGrath, Inc. (Mass.) 186 N. E. 225; Kentucky Electric Development Co. v. Wells (Ky.) 75 S. W. 1088; Welton v. Building Corporation, 7 Fed. (2d) 377; Ferry-Leary Land Co. v. Holt & Jeffrey (Wash.) 102 P. 445; Funk v. Inland Power Co. (Wash.) 1 P. (2d) 872.

And in Hasselbring v. Koepke, 248 N. W. 869, the Supreme Court of Michigan held in paragraph 20 of the syllabus as follows:

"Where mandatory injunction is sought against breach of restrictive covenant, court will balance benefit of injunction to plaintiff against inconvenience and damage to defendant and grant injunction or award damages as seems most consistent with equity under all circumstances."

And in Wagner Electric Corporation v. Hydraulic Brake Co. (Mich.) 257 N. W. 884, the court held in paragraph 5 of the syllabus:

"In issuing writ of injunction, court should look beyond actual injury to contemplate consequences and, though palpably wrong, should balance inconveniences of awarding or denying writ and adjudge as these may incline the judicial mind."

And in Gibson v. City of Tampa (Fla.) 154 So. 842, the court held in paragraph 2 of the syllabus:

"Court of equity may properly refuse to grant injunction when it appears that greater injury and inconvenience will be caused to defendant by granting injunction than will be caused to complainant by refusing it."

And in Linn County v. Calapooia Lumber Co. (Ore.) 121 P. 4, the court held in paragraph 2 of the syllabus:

"It is against the policy of a court of equity to issue an injunction which must necessarily destroy property."

And in Barker v. Mintz (Colo.) 215 P. 534, the court held in paragraph 4 of the syllabus as follows:

"A chancellor will always look to see how great harm an injunction will do defendant, and will refuse it when the harm is too great."

And in Winters v. Turner (Utah) 278 P. 816, the court held in paragraph 6 of the syllabus as follows:

"The comparative convenience or inconvenience of parties from granting or withholding an injunction should be considered and an injunction should not be granted if it would operate oppressively or inequitably or contrary to real justice of case."

In Menter v. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857, the Supreme Court of Minnesota used this apt language:

"Injunction will not be granted to enforce the provisions of a contract unless the court is satisfied that the enforcement will be just and equitable and will not work hardship or oppression." Citing Bradshaw v. Milliken, 173 N. C. 432, 92 S. E. 161.

Since the plaintiff elected to cease furnishing milk to the defendant, necessary to operate its plant and business, it would hardly be just and equitable, under the facts here shown, to prevent the defendant from obtaining elsewhere its needed milk supply. Since the direct result of the granting of the injunctive relief here sought would be the closing of the defendant's plant and the destruction of its business, such action by this court would work an unjustified hardship, and would equal or too closely approach oppression by injunction.

When this action was commenced, the plaintiff of course had its remedy by proper action for recovery of any sums due for milk, if any such sums remained unpaid. This opinion does not purport to affect any

such rights, nor any right to sue for damages which the plaintiff may have had. But we cannot sanction the granting of the injunctive relief here sued for.

The trial court granted the injunction, evidently proceeding upon the theory that the action involved only a mere breach and threatened breach of contract, which could be wholly repaired by injunction. Therein the trial court erred.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with directions to deny the injunctive relief sought.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and CORN, JJ., concur.