**SOUTHWEST PETROLEUM CO. et al. v. LOGAN et al.**

**SOUTHWEST PETROLEUM CO. et al. v. SWINDALL et al.**

Nos. 27726, 27727.    Sept. 14, 1937.

478

Howard B. Hopps (A. Leonard Brougham, of counsel), for plaintiffs in error.

Charles Hill Johns (Harold Thweatt, of counsel), for defendant in error Margaret Logan.

Shirk, Danner & Earnhart, Charles Hill Johns, and Charles Swindall, for defendants in error Charles Swindall et al.

Wm. L. McCann, for plaintiffs in error Wm. L. McCann, Henrietta Z. McCann, William A. Pettit, and Angeline Pettit.

HURST, J. These are actions seeking permanent injunctions to prevent the drilling of oil and gas wells in Lincoln Terrace addition in Oklahoma City. As both cases involve the same facts and same issues and have been consolidated on appeal, they will be treated together in this opinion. In the Logan case, the action was commenced by the petition of Margaret Logan, owner of lot 20 in block 7 of the addition, for herself and all others similarly situated and who desired to join therein, and by the intervening petition of A. D. Sills and his wife, owners of lot 12 in block 15, both seeking to prevent the commencement of drilling operations on lot 11 of block 15. G. A. Nichols and his wife intervened as plaintiffs at the trial. The Swindall case was commenced by the petition of Charles Swindall and his wife, owners of lots 16 and 17 in block 6, to prevent drilling operations on lots 12 and 22 of block 6 in the addition. The Southwest Petroleum Company was a defendant in both cases along with numerous lot owners in the addition who had executed oil and gas leases to that company, and at the trial many other lot owners joined as defendants.

Lincoln Terrace addition covers about 97½ acres and was laid out by the filing of three separate plats by J. J. Culbertson, Jr., and his wife, who were at that time the owners of the whole tract. The first plat, covering the major part of the addition, was filed on June 28, 1926, and included blocks 7 to 23, both inclusive. With it was filed an "Owners' Certificate & Dedication," executed by Culbertson and his wife, which included the following clause:

"5. All lots in this plat are restricted to **residences only,** except lots 10 to 17 inclusive Block 17, on which apartments may be erected, and all of Block 20, on which retail business buildings or apartment houses may be erected."

On November 10, 1926, the plat of blocks 4, 5, and 6 was filed and with it was also filed an "Owners' Certificate & Dedication," which provided:

"4. All lots in this plat are restricted to **residences only.**"

The plat for the remaining part of the addition, blocks 1, 2, and 3, was filed on

February 26, 1927, together with another similar "Owners' Certificate & Dedication," which contained the clause:

"4. All lots in this plat are restricted to **dwellings only.**"

The owners then commenced to sell the platted lots in the addition and the organization of Mr. G. A. Nichols conducted an advertising campaign by a series of newspaper advertisements. These advertisements called attention to the restrictions, stating that they were protective and insured the purchasers that all houses would be equally desirable and of brick, stone, or stucco, and contained other advertising matter to the effect that the district would be the city's finest residential district. They also stated the price range of the lots to be from $850 to $7,500 per lot.

The platters then conveyed to their immediate grantees by warranty deeds containing the statement immediately after the warranty clause: "except subject to the following restrictions, **in addition to those recited in the dedication.** * * *" (Emphasis ours.) The subsequent deeds contained no reference to the restrictions. They only referred to the plats by the usual phrase "according to the recorded plat thereof," following the description of the property. Within four or five years after the dedication, practically all of the lots in the addition were thus sold and valuable residences built thereon. The total value of the improvements in the addition was estimated at $3,650,000.

At the time the addition was platted, the original zoning ordinance, passed in 1923, was in force and the city was divided into districts, according to their use, i.e., U.1, Residence District; U.2, Apartment House District; U.3, Business and Light Manufacturing District; U.4, Heavy Industry. All the property in Lincoln Terrace addition was in U.1, Residence District, at the time the plat was filed. On May 10, 1929, U.7, or the oil and gas district, was created by an amendatory ordinance. It was made unlawful to drill for oil and gas within the corporate limits of the city, except within the limits of the oil and gas district. The ordinance provided for the regulation of drilling within this district. On May 22, 1936, by Ordinance No. 4778, the oil and gas district was extended to include Lincoln Terrace addition.

Thereafter, the Southwest Petroleum Company, having acquired leases from various lot owners in the addition, applied to the building superintendent of Oklahoma City for permits to drill in block 15 and block 6, and these actions were commenced.

The several petitions and replies filed by plaintiffs and intervening plaintiffs presented four theories to the trial court in support of their prayers for permanent injunctions. They are, in substance, (1) that the addition is restricted to residences only by the "Owners' Certificate & Dedication" filed with the plats; (2) that the leases executed by the other lot owners in the restricted area to the Southwest Petroleum Company are void; (3) that the drilling for oil and gas in the addition would create a nuisance; and (4) that a zoning ordinance which attempts to permit drilling operations in this restricted area is unconstitutional. The defendants raised the general issue as to the equitable relief sought and pleaded defensive matter presenting six grounds for the denial of the injunctions. They are, in substance, (1) that there are no specific restrictions against drilling for oil and gas; (2) that the addition is in the drilling zone created by the city ordinance; (3) that there is an oil field surrounding the addition which is draining a common pool under the addition; (4) that the home owners in the addition have no remedy to recover for this drainage except the drilling of wells in the addition themselves; (5) that drilling is only a temporary use and will not prevent the addition from continuing to be used for residential purposes, and that the benefit resulting from drilling will exceed the damage thereby occasioned; and (6) that because of the drilling operations conducted in the immediate vicinity, the conditions have changed so that it would be inequitable to enforce the restrictions.

At the trial numerous property owners in the addition testified that they had purchased with reliance on the restrictions and had built and maintained residences of considerable value. Also, that their residences were livable and suitable for residence purposes, but that the intrusion of drilling operations into the addition would make them unlivable and unsuitable. They all admitted on cross-examination, however, that the livability and market value had to some extent already been adversely affected by the proximity of the surrounding drilling operations. On the other hand, the defendants produced many other property owners who testified that drilling in the addition would not affect their use of the property for residence purposes any more than they had already been affected by the adjacent drilling operations. Defendants pro-

duced evidence that the depreciation due to the surrounding oil field was from 33⅓ to 50 per cent., and that drilling in the addition would at most create only a temporary annoyance. Also, expert witnesses for the defendants testified that potentially fifteen to sixteen million barrels of oil was recoverable from the addition, with an estimated four or five million dollars net for the property owners therein.

The trial court made an oral statement which was incorporated in the record as findings of fact and conclusions of law, and rendered judgment granting the injunctions prayed for by plaintiffs on the ground that the restrictions are binding. The defendants bring these appeals with many assignments of error upon which they present the propositions hereinafter discussed.

1. Defendants first contend that the trial court should have refused to grant the injunctions for lack of sufficient evidence to show that the lot owners in Lincoln Terrace addition had entered into or assumed the burden of any covenant restricting the use of the land for oil and gas purposes. It is argued that no such restrictions were created by plat and dedication for the reason that at the time of such dedication the whole addition was owned by the Culbertsons, and that the restrictions filed with the plat did not create easements on any part in favor of other parts which would prevent the original owners from conveying other lots without the restrictions. In support of this argument defendants rely on Gardner v. Maffitt (Mo. 1934) 74 S. W. (2d) 604, holding that "so long as a tract remains in one ownership, there can be no dominant and servient tenements as between different portions, and the owner may rearrange the quality of any possible servitude." That case is based on the theory that easements are created by grant, and that there can be no effective grant binding the other lot owners until a severance of title has occurred. This argument finds support in actions by the grantee against the original grantor on the principle that while the grantor is still the owner of the land, the filing of the plat with restrictions does not entitle the purchaser to assume that the whole tract is governed by a general building scheme and that each lot will thereafter be sold by the platters in accordance with the plan. 4 Thompson on Real Property, secs. 3375, 3376.

It is further argued that no restrictions were created by the deeds to the various lots in Lincoln Terrace addition for the reason that they contain no express limitation on the grant or reservation of the minerals or covenant against the execution of oil and gas leases, and that the deeds merely refer to the restrictions as an exception to the warranty, which is not sufficient to authorize an injunction against drilling. In support thereof defendants cite Echolustee Oil Co. v. Johnston (1931) 153 Okla. 92, 3 P. (2d) 227, holding that the exception stated in the warranty clause in that case did not operate as a reservation of the minerals, but only excepted a one-fourth interest in the minerals from the operation of the covenant of warranty.

But none of these arguments and authorities are pertinent under the circumstances in the case at bar, for the restrictions on the use of all the lots in this addition "for residences only" and "for dwellings only" are binding upon the defendants upon an entirely different theory than suggested above. It has long been an established principle that an agreement restricting the use of land in a certain tract, imposed thereon by a common grantor under a general improvement plan, intended for the mutual benefit of all grantees therein, may be enforced in equity by any subsequent grantee in such tract, who purchased with reliance on the general plan, against any other subsequent grantee taking with notice of the restrictions. Tulk v. Moxhay (Eng.) 2 Ph. 774, being the basic case; Boyden v. Roberts (Wis. 1907) 111 N. W. 701; Trustees of Columbia College v. Lynch, (1877) 70 N. Y. 440; Menstell v. Johnson (Ore. 1927) 262 P. 853; 2 Pom. Eq. Juris., (2d. Ed.) sec. 689; 3 Pom. Eq. Juris. (2d Ed.) secs. 1295, 1342; 4 Thompson on Real Property, secs. 3407, 3408 (see footnotes 79 and 83 for collection of cases). In section 3407, Thompson on Real Property, it is stated:

"One who takes land with notice of a restrictive agreement affecting it cannot equitably refuse to perform it, though the agreement may not be a covenant which runs with the land, or creates a technical qualification of the estate conveyed."

The restrictions need not rise to the dignity of a grant or reservation, but create an equitable right in the nature of an easement, enforceable in equity against all persons taking with notice, even if it rests on no broader principle than that equity will enforce a proper contract concerning land, against all persons taking with notice of it. Codman v. Bradley (Mass.) 87 N. E. 591. Although this principle is not expressly recited, this court has heretofore by dictum recognized the creation of re-

strictions by the recorded plat alone. In Commercial Realty Co. v. Pope (1935) 171 Okla. 331, 43 P. (2d) 62, the court upheld "the restrictive provisions of a dedicatory plat." The precise question now before us was not discussed. In Vaughn v. Lyon (1927) 122 Okla. 179, 252 P. 1088, the court said:

"We take it that the law is well settled that, where there is a general plan or scheme for the improvement or development of any particular tract of land, which scheme or plan is designed to make it more attractive for residential purposes by placing certain restrictions upon the individual units of the property, **either in the dedication of the plat covering same** or in the deeds by which title is conveyed, the owner of one lot may enforce such restrictions against the owner or occupant of another lot." (Emphasis ours.)

Equity imposes the burden of the restriction upon the defendants on the principle of notice, and the right of plaintiffs as grantees from the common grantor is based upon the general improvement plan for the mutual benefit of all those who might become owners of the separate lots, rather than for the benefit of the grantor alone. 4 Thompson on Real Property, secs 3399, 3401, 3406. Thus, in an action by the grantor to enforce the restrictions against subsequent grantees, the question is solely one of notice, but in the instant case the evidence must support both a general improvement plan and notice of the restrictions. In regard to the evidence, the rule in this case is that the findings and judgment of the trial court will not be reversed unless they are against the clear weight of the evidence. Commercial Realty Co. v. Pope, supra.

The question of whether there is a general improvement scheme is a question of fact, to be determined from all the circumstances of the case. Berry, Restrictions on the Use of Real Property, sec. 318. The restrictions in the "Owners' Certificate & Dedication" pertain uniformly to all lots, and the warranty deeds to the immediate grantees referring to the restrictions were on a uniform printed form prepared by the platters. This, together with the advertising campaign representing the whole addition to be restricted, clearly shows the intention to promulgate a general improvement scheme for the benefit of all persons who purchased lots, and to create an exclusive high class residential district. There is abundant evidence that the plaintiffs purchased their lots with reliance on this general plan and that it induced them to buy.

The notice required may be either actual or constructive. Each "Owners' Certificate & Dedication" was recorded along with the plats, surveyors' certificates, approvals by regional planning commission, abstracters' certificates, and county engineer's certificates. They were entitled to record under section 6167, O. S. 1931, the reference to the restrictions "recited in the dedication" contained in the deeds to all of the immediate grantees was sufficient to require the purchasers to examine all instruments filed with the dedication to discover the restrictions, and they must be all considered together as one instrument. Boyden v. Roberts, supra. Under these circumstances, all the purchasers in Lincoln Terrace addition had constructive notice of the restrictions.

The question then narrows to one of interpretation of the clause, "All lots in this plat are restricted to residences only," or "to dwellings only." Both terms will be considered as synonymous. We are not unmindful of the rule that restrictions on the use of real property must be construed strictly. Cooke v. Kinkead (1936) 179 Okla. 147, 64 P. (2d) 682. Nevertheless they will be enforced in a proper case and will not be extended on the one hand or limited on the other, but strictly enforced. Berry, Restrictions on Use of Real Property, secs 34, 35, 37. This court in Vaughn v. Lyon, supra, quoting from Test Oil Co. v. LaTourette (1907) 19 Okla. 214, 91 P. 1025, said:

"Covenants restraining the use of real property, although not favored, will nevertheless be enforced by the courts where the intention of the parties is clear in their creation and the restrictions or limitations are confined within reasonable bounds. In construing such covenants effect is to be given to the intention of the parties as shown by the language of the instrument, considered in connection with the circumstances surrounding the transaction and the object had in view by the parties.***"

In Thompson on Real Property, sec. 3362, and Berry on Restrictions on Use of Real Property, sec. 34, however, the authors limit the consideration of the surrounding circumstances to cases where the meaning of the words is doubtful or ambiguous. Strictly speaking, this is the more accurate view, but under either view the restrictions above quoted must be construed to prevent the drilling of oil and gas wells in the addition. The phrase "All lots in this

plat are restricted to residences only" excludes all other uses upon the land, and is clear and unambiguous. Under the natural and common sense meaning of the term "residences" we cannot say that the drilling of wells for oil and gas is a use of property for residence purposes. It does not matter that the parties did not anticipate the oil development in this area and contemplate the necessity of excluding the drilling of oil wells in the addition when it is clear that they intended to exclude every use not pertaining to residence purposes.

The case of Cooke v. Kinkead, supra, denying an injunction to prevent drilling in Howe's Capitol addition to Oklahoma City, is distinguishable from the instant case in that the restrictions there were held to apply to the use of buildings on the premises and not to the use of the land itself. In the case before us, the restrictions clearly apply to the use of the land.

Defendants contend that there being no reference to mineral rights, the restrictions can only be construed to apply to the surface rights in the land, and that they cannot be extended by construction to apply to the mineral rights, which constitute a severable and separately enjoyable estate in land. It is then argued that the defendants are entitled to exercise these rights limited only by the regulations of the drilling zone ordinances enacted under the police power, and that this exercise would only require a temporary occupation which was not contemplated to be prevented by the restrictions. But inasmuch as the restrictions are construed to prevent any use of the land not pertaining to residence purposes, it will apply to a temporary use as well as a permanent one. The language used will not warrant a distinction between a temporary and permanent violation if such violation is material. It is true that the restrictions do not expressly refer to the mineral rights, but the enjoyment of those rights necessarily requires a use of the surface which is a substantial and material violation of the restrictions, although not permanent in its nature. Therefore, it is not necessary that the deeds to the various lots contain covenants restricting the grantees from leasing the premises for oil and gas purposes.

2. Defendants contend that because of the actively producing oil field in the immediate neighborhood and surrounding Linroln Terrace addition, the conditions have changed so that the purpose of the restrictions has been destroyed and the injunc-

tions cannot be of any substantial benefit to plaintiffs, but, on the other hand, will deprive them as well as the defendant home owners of the only means whereby they can recoup for the damages already sustained by the adjoining oil fields, and will be inequitable and oppressive upon all of the defendants. The law regarding change of condition of the surrounding neighborhood as a defense to such actions appears fairly well settled, but each case must be decided on the equities of each particular situation as it is presented. The test ordinarily is whether the original purpose and intention of the parties creating the restrictions pursuant to the general scheme has been so destroyed by the changed conditions, without fault on the part of those who seek to be relieved, that the restrictions are no longer of substantial benefit to the residents, and the original purpose cannot be reasonably effected by the granting of an injunction. Van Meter v. Manion (1934) 170 Okla. 81, 38 P. (2d) 557; Commercial Realty Co. v. Pope, supra. In the last case cited, this court held:

"Where there is competent evidence showing no purpose or plan on the part of the residents of the restricted area to abandon the original scheme or purpose of creating an exclusive residential section, and where the evidence as to a change of conditions is not sufficient to show that the original purpose cannot now be accomplished, and where it is shown that substantial benefits still inure to the residents of the restricted area by the enforcement of the restrictions, the judgment of the trial court enforcing the restrictive provisions of a dedicatory plat is not against the clear weight of the evidence."

Applying the same rule with contrary results are Trustees of Columbia College v. Thacher (1882) 87 N. Y. 31, 41 Am. Rep. 365; Downs v. Kroeger (Cal. 1927) 254 P. 1101; Barton v. Moline Properties (Fla. 1935) 164 So. 551, 103 A. L. R. 725, and note.

Defendants introduced testimony to the effect that the lots on the outside of the addition, bordering on adjacent oil fields, would sustain no more damage by drilling within the addition, than has already been sustained. The language in Trustees of Columbia College v. Thacher, supra, supports the contention that it is not necessary for the change in condition to extend to every lot in the addition. But the question is still whether a sufficient part of the addition has been affected so as to defeat the restrictions, and even though the lots on the edge or threshhold of the restricted area must bear the brunt of the

outside commercial expansion. yet if the restrictions are still a substantial value to those within, they will be enforced. The very purpose of the restrictions is to protect the property in the restricted area from such invasion. Van Meter v. Manion, supra; Rombauer v. Compton Heights Christian Church (Mo.) 40 S. W. (2d) 545; Trustees of Columbia College v. Thacher, supra.

The evidence discloses that the development of the oil field surrounding Lincoln Terrace has impaired its residential value from 35 to 50 per cent. Some witnesses testified that it was no longer suitable for residential purposes, while others testified it was still a suitable place for residence purposes and that to permit drilling would render it unfit. It appears from the records in these cases and in the companion case of Smith Oil Co. v. Margaret Logan, 180 Okla. 474, 71 P. (2d) 766, that about half of the lot owners in the addition had signed (a) circulated petitions of waiver of the restrictions, (b) lease to the Smith Oil Company, (c) lease to the Southwest Petroleum Company, or (d) lease to consolidate their property with the State Parking lease, thus expressing their desire to be relieved from the restrictions. Such evidence can be considered in determining the equities under this issue. Nashau Hospital Ass'n v. Gage (N. H.) 159 Atl. 137; Batchelor v. Hinkle (N. Y.) 104 N. E. 629; Starkey v. Gardner (N. C.) 138 S. E. 408, 54 A. L. R. 806. But this factor is not controlling, and the evidence in this regard appears fairly evenly divided. From our examination of the entire record we conclude that the addition still has substantial value to the lot owners for residential purposes. Under these circumstances, although the property is undoubtedly valuable for oil and gas purposes, this will not relieve the defendants from the restrictions, for we cannot say that the original purpose of preserving to the home owners in the addition a purely residential district cannot be accomplished by granting the injunctions. Van Meter v Manion, supra, and authorities therein cited.

We cannot accede to defendants' argument that the original purpose to create an exclusive high class residence district has been destroyed because it will no longer be high class or exclusive. The question is not whether suitable persons will in the future purchase property in the addition, but whether the restrictions still preserve to the addition its character of a residence district. Bohm v. Silberstein et ux. (Mich. 1922) 189 N. W. 899.

In weighing the equities we have also considered defendants' argument that drilling in Lincoln Terrace will remove such quantities of oil that it will reduce the time required to drain the oil pool in that area by perhaps five years and thus rid the whole territory of the oil field which is damaging the property. But the speculative nature of the facts upon which this argument is premised detracts from its force.

The cases relied on by defendants are distinguishable on their facts. In Trustees of Columbia College v. Thacher, supra, where the construction of an elevated railroad through the street on which the restricted land was located and development of the street and surrounding property permitted persons to look directly into the windows and rendered privacy and quiet impossible, it was held that the change of condition frustrated the scheme of the restrictions, and defeated the object of the covenant, rendering its enforcement inequitable, so relief would not be granted. See 4 Thompson on Real Property, sec. 3438, for discussion of this case. The principles therein stated do not conflict with our holding. Neither is there any conflict in cases refusing to enforce restrictions where the conditions have so changed that the restrictions have become valueless to the property to which they are subject and onerous to those seeking relief from them, as in Downs v. Kroeger, supra, and Barton v. Moline Properties, supra, considered with supplemental opinion on rehearing.

Lincoln Terrace addition is of considerable size. It consists of 97½ acres divided into 23 blocks. It has been developed pursuant to the restrictions and under the circumstances we conclude that the judgment of the trial court in applying the principles herein stated to the facts is not against the clear weight of the evidence.

3. Defendants further contend that Ordinance No. 4778 extending the oil and gas drilling zone to include Lincoln Terrace addition supersedes the restrictions created by the "Owners' Certificate & Dedication," and, under the police power, relieves the addition from those restrictions created by private contract. The argument is based upon the proposition that the clause in the state and federal Constitutions providing that no law shall be passed which impairs the obligation of contract is not applicable to ordinances within the scope of the police power. We have carefully examined the separate brief on this proposition, but agree with the trial court in that it is not ten-

able in this case. The police power is based upon the right to promote the health, morals, safety, and general welfare of the community. The drilling zone ordinances regulate drilling operations where the right to drill already exists, and restricts such operations to certain areas to promote that end. Hubbard v. Oklahoma City (1936) 177 Okla. 263, 58 P. (2d) 547; Keaton v. Brown (1935) 171 Okla. 38, 45 P. (2d) 109. They clearly do not grant the right to drill or prevent the enforcement of private agreements against drilling in certain areas which are so restricted. The granting of the right to drill where it is otherwise prohibited is not contemplated by the zoning ordinances, for it can have no relation to the promotion of health, safety, morals, or general welfare of the public at large. Therefore, we are not called upon to decide the further proposition advanced by the defendants that Ordinance No. 1778 is constitutional. But, see Hubbard v. Oklahoma City, supra.

4. In view of our holding that defendants are bound by the restrictions, it becomes unnecessary to discuss the question of whether drilling would constitute a nuisance or the question of whether the leases to the Southwest Petroleum Company are void, both of which were urged by plaintiffs and controverted by defendants.

5. We find no merit in defendants' proposition that the plaintiffs are not entitled to equitable relief for the reason that they have an adequate remedy at law. "Injunction is the proper remedy to enforce against the purchaser of land with notice, a valid restriction on the use of that land." Berry, Restrictions on Use of Real Property, sec. 267.

The judgment in both cases is affirmed.

OSBORN, C. J., and WELCH, PHELPS, CORN, GIBSON, and DAVISON, JJ., concur. BAYLESS, V. C. J., and RILEY, J., dissent.

RILEY, J. (dissenting). In these causes there is involved the question whether plat restrictions in Lincoln Terrace addition to Oklahoma City prevent drilling for oil and gas within the addition. The trial court answered the question affirmatively, and as an original proposition I would affirm the judgments rendered, but in view of the recent decision of this court upon the same question, as applied to the adjoining Howe's Capitol addition, Cooke v. Kinkead, 179 Okla. 147, 64 P. (2d) 682, involving, as I view it, substantially the same restrictions, and

in view of development for oil and gas about Lincoln Terrace addition, and general drainage of the area involved, I hold that such a change in condition has occurred, so as to warrant reversal of the judgment rendered below.