WILLIAMSON et al. v. NEEDLES et al.

No. 30538.   Dec. 1, 1942.

*133 P. 2d 211.*

W. R. Wallace and B. B. Blakeney, both of Oklahoma City, for plaintiffs in error.

Robert Burns, of Oklahoma City, for defendants in error.

BAYLESS, J. This action was instituted by defendants in error, hereinafter referred to as plaintiffs, against the plaintiffs in error, hereinafter referred to as defendants, and another not here involved, to enjoin the erection and operation of an automobile service station.

Plaintiffs in their petition alleged, in substance, that they were the owners of lots 53 and 54, and that defendant A. G. Williamson was the owner of lots 29, 30, and 31, in block 2 of Crestwood addition to Oklahoma City; that plaintiffs were using their property for residential purposees in accordance with the restrictions contained in the plat and dedication of said addition; that defendant A. G. Williamson in violation of said plat restriction had obtained a permit to build an automobile service station on his said lots and had entered into a contract with his codefendant, Magnolia Petroleum Company, to lease said building to them to be operated as a retail business concern, and that defendant Williamson had further induced the adjustment board of the planning commission to zone said property for business purposes; that such action, if permitted, would destroy the value of plaintiffs' property and all other property in said block for residential purposes, and sought a permanent injunction.

The plaintiffs were given a temporary injunction, but due to inability to make the required bond this injunction never became effective.

The defendants answered separately, and after a general denial alleged, in substance, that the restrictive covenant in said plat and dedication had never become effective by reason of errors and failure to strictly follow the law, and

pleaded further that plaintiffs were guilty of laches in permitting defendant to proceed without objection, and further alleged that if the restriction in said plat and dedication was ever effective, the same had been outmoded by changing conditions and should not be enforced; and, finally, defendants had proceeded to complete the erection of the building and place the same in operation, and if injunctive relief were granted, that this would result in great financial loss to the defendants. Whereupon the defendants prayed that plaintiffs be relegated to their remedy at law for damages and be denied injunctive or any other equitable relief. Upon the issues thus framed, trial was had to the court.

The evidence adduced at the trial discloses, substantially, the following state of facts: that Crestwood addition was a part of a tract of land which had been platted as Jones Park addition, and without that plat having been vacated in the manner prescribed by law, was replatted as Crestwood addition; that in the last-named plat it was provided as follows:

"That no business building shall be erected on any lots herein platted; excepting on the South side of Block 10 and on the North side of Block 1, it being the intention of the grantor herein to restrict the right to place business houses in this addition on the South one-half of Block 10 and the North one-half of Block 1."

The evidence further showed that no business houses had been erected in block 2 of said addition; that there were a number of business houses on properties located in other additions on the east, north, and west of this addition, resulting in business properties being located immediately across from the property here involved, and that there was considerable business development in the neighborhood. It was not shown, however, that there had been any purpose or intent on the part of the residents of Crestwood addition to abandon the general scheme or purpose for which it had been designed, but, on the con-

trary, it was shown that the restrictions mentioned had generally been observed, with one immaterial exception. Neither was it shown by the evidence that the purpose, due to change in condition, could any longer be accomplished, but, on the other hand, there was evidence introduced to show that substantial benefit would still inure to the residents of the district by the observance of restriction contained in the plat and dedication. Under the evidence substantially as above narrated, the trial court found in favor of the plaintiffs and permanently enjoined defendants from using the property here involved for business purposes. Motion for new trial was overruled, and defendants have perfected this appeal.

As grounds for reversal of the judgment below, the defendants make four contentions which may be thus summarized: (1) The restriction contained in the plat and dedication was inoperative as to the defendant A. G. Williamson; (2) the plaintiffs were guilty of laches in permitting the defendants to proceed with the erection of the filling station, and therefore should be barred from equitable relief; (3) that the restriction contained in the plat and dedication had been outmoded by changing conditions and should not be enforced by a court of equity; and (4) that applying the rule which requires a balancing of equities, the preponderant equities should have been held for the defendants.

In support of the first contention made, defendants urge that since block 2 of Jones Park addition did not contain the restrictions that were imposed upon block 2 of Crestwood addition, such restrictions so attempted to be imposed upon Crestwood addition are not effective because the plat of Jones Park addition was not vacated and existed as a barrier to the replatting of the same tract of land as Crestwood addition. In this connection they cite Scott v. Noble, 18 Okla. 409, 89 P. 1122, and Clark v. Rain, 51 Okla. 206, 151 P. 692, which announce the rule that platted subdivisions or additions to cities may

be vacated only in the manner prescribed by our statutes. They also cite Magnolia Petroleum Co. v. Drauver, 183 Okla. 579, 83 P. 2d 840; Southwest Petroleum Co. v. Logan, 180 Okla. 477, 71 P. 2d 759, and other cases as authority for the rule that restrictions are in derogation of the free use of property and are not favored and are to be given a strict construction.

We recognize these rules and the correctness of their application to the fact situations to which they were applied. However, those cases are not authority for the contention made that one plat may not be superimposed over another plat until the first plat has been vacated. We have not been cited nor have we found any cases announcing such a rule.

We are of the opinion, however, that there are other equally well-known rules applicable here which entitle plaintiffs to the equitable relief sought. We allude to the rule of equitable restrictions. We are of the opinion these other rules would suffice to require equitable protection to plaintiffs, even if it should be assumed the attempt to replat this land into Crestwood addition without first vacating Jones Park addition was abortive and ineffectual. In Tiffany Real Property (3d Ed.) vol. 3, § 858, it is said:

"The number of decisions in comparatively recent years involving the validity, construction and effect of agreements restricting the use of real property indicate the increasing use being made of them. This reflects, it has been aptly commented, the expansion of the law to meet the demands of home owners for a protection adequate to the more crowded conditions of modern life. The basis of the modern rules for the enforcement of such restrictions is that one taking land with notice that it is subject to an agreement of this character will not in equity and good conscience, be permitted to violate its terms."

"In equity, the question whether such a covenant runs with the land is material on the question of notice only, since, if it runs with the land, the purchaser is bound regardless of his knowledge of it, while if it does not so run, he is bound only if he took the land with notice of the covenant."

Again in the same work, sec. 867, it is said:

"The question of who may enforce a restrictive agreement as to the use of land has arisen most frequently in connection with agreements entered into in furtherance of some general plan or scheme of improvement devised by the owner of land upon its division into building lots, it being intended that the purchasers of lots shall, for the common benefit of all, utilize the lots only in accordance with such plan. The cases are to the effect that when such a general plan exists, any one who purchases one of the lots with knowledge of the plan may assert the restrictions involved therein as against any other purchaser."

In support of this statement cases from many states are cited.

It is obvious from defendants' argument that they assume that restrictions of this nature can be established by the method of platting and public dedication alone, and then only if the scheme is carried out in a manner completely in accord with the statutes. As pointed out in the following paragraph, restrictions may be established in one of several ways.

In 26 C. J. S. 505, § 162, it is said:

"Restrictions limiting the use of land may be variously created as by a reservation in the deed, by a condition annexed to the grant, by a covenant, or necessary implication, but should be clearly defined and understood by the parties."

This language was substantially quoted in Union Missionary Baptist Church v. Fyke, 179 Okla. 102, 64 P. 2d 1203. We observe that this rule has wide application judged by the footnotes to the text and earlier works.

Referring again to the subject of restrictions implied from a general plan of development and observance, we notice that the point is mentioned in 18 C. J. 394, § 459. Among the cases cited in the footnotes is that of Schmidt

v. Palisade Supply Co. (N. J. Ch.) 84 Atl. 807. In that case it appears that lots lying in a described development area were extensively advertised for sale under a scheme of substantial restrictions relating to cost, size, and materials of structure for residence purposes, and a general scheme for the exclusion of businesses, saloons, etc. All deeds issued contained these restrictions. A parent company conveyed certain lots to a subsidiary company, and in the subsidiary sold some of them, but it developed that at the time the parent company deeded the lots and imposed the restrictions its title to the lots was not good, and it was not until later that it acquired title and stood in a position to defend on its warranty. This was used as an excuse to violate the restrictions as to those lots and as a defense to the action. The New Jersey court said:

"This, then, brings us to the actual question involved, and the only real defense necessary to be considered. The law relating to building schemes, and the enforceability among purchasers from a common grantor of restrictive covenants, has been dealt with in so many cases and under so many different conditions of fact that the only satisfactory consideration of the subject as a whole can be had by referring to the extensive treatment received in two recent notes where all the cases are gathered and considered. Judd v. Robinson, 41 Colo. 222, 92 P. 724, 124 Am. St. Rep. 128, 14 Ann. Cas. 1018 et seq.; Korn v. Campbell, 37 L. R. A. (N. S.) 12, at page 27, note. Since, in my view, the facts in this case clearly prove a general building scheme such as would entitle the purchasers inter sese to enforce the respective covenants contained in the deeds of each, it is not necessary to indulge in extensive citations from the mass of authority contained in the above references. Neither the industry of counsel nor my own research have resulted in finding any case which deals with the precise question we are called upon to decide. In the case of Elliston v. Reacher (1908) 2 Ch. 374, affirmed (1908) 2 Ch. 665, the court lays down the following rule as to the enforcement of restrictive covenants by purchasers inter sese: 'It must be proved (1) that both the plaintiffs and defendants derive title under a common vendor; (2) that previously to selling the lands to which the plaintiffs and defendants are, respectively, entitled, the vendor laid out his estate or a defined portion thereof (including the land purchased by the plaintiffs and defendants, respectively) for sale in lots subject to restrictions intended to be imposed on all the lots, and which, though varying in details as to particular lots, are consistent and consistent only with some general scheme of development; (3) that these restrictions were intended by the common vendor to be and were for the benefit of other land retained by the vendor; and (4) that both the plaintiffs and defendants, or their predecessors in title, purchased their lots from the common vendor upon the footing that the restrictions subject to which the purchases were made were to inure for the benefit of the other lots included in the general scheme, whether or not they were also to inure for the benefit of other lands retained by the vendors. If these four points be established, I think that the plaintiffs would in equity be entitled to enforce the restrictive covenants entered into by the defendants or their predecessors with the common vendor, irrespective of the dates of the respective purchases.' In our own leading case of De Gray v. Monmouth Beach Clubhouse Co., 50 N. J. Eq. 329, 24 Atl. 388, affirmed 67 N. J. Eq. 731, 63 Atl. 1118, the principle is stated thus: 'Where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues, and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof, and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan, one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase.' And in the same

case the court said: 'The equity would seem to spring from the presumption that each purchaser has paid an enhanced price for his property, relying on the general plan, by which all the property is to be subjected to the restricted use, being carried out, and that, while he is bound by and observes the covenant, it would be inequitable to him to allow any other owner of land, subject to the same restrictions, to violate it.' The Chief Justice, writing the opinion in the case of Elliston v. Reacher, supra, concludes with the statement that the underlying principle of the rule of relief is 'that, where the four points I have mentioned are established, the community of interest imports in equity the reciprocity of obligation which is, in fact, contemplated by each at the time of his own purchase.' Applying this reasoning to the novel situation with which we are confronted, I reach the conclusion that the covenants in the respective deeds of the complainants and defendants are mutually and reciprocally actionable by each as against the other.''

We think the statement of the four essentials to support equitable relief is satisfactory, and the evidence in this case shows that each of them was present in this case.

We also have in mind the rule that an attempt to plat and dedicate that is incomplete under the statutory scheme may nevertheless be sufficient as a common-law plat and dedication, and will be binding upon all of those who have notice and purchase under it. 63 A. L. R. 667, and the annotation that follows. This rule has been applied in Oklahoma in Kee v. Satterfield, 46 Okla. 660, 149 P. 243, in this language:

"We do not agree with the contention of the defendant in error that the statute did not begin to run, because this has never been a proper statutory dedication. It appears that the defendant in error, together with his wife, filed a plat of their land, laid off in lots, blocks, streets, and alleys, which was duly filed for record on August 7, 1902, and lots sold in accordance therewith. This was a sufficient common-law dedication. See Elliott on Roads and Streets, page 91; Morgan v. Railway Co., 96 U. S. 723, 24 L. Ed. 743; City of Cincin-

nati v. White, 6 Pet. 431, 8 L. Ed. 452; New Orleans v. U. S., 10 Pet. 662, 9 L. Ed. 573; Bank v. Oakland, 90 Fed. 698; Davenport v. Buffington, 97 Fed. 234.

"In Morgan v. Railway Co., 96 U. S. 723, 24 L. Ed. 743, the court says:

" 'All that is required (to make a valid dedication) is the assent of the owner and the use of the premises for the purposes intended by the appropriation. The law considers the owner's acts and declarations as in the nature of an estoppel in pais, and precludes him from revoking the dedication.' "

See, also, Moore v. Adams, 200 Ark. 810, 141 S. W. 2d 46.

This rule of common-law dedication is applied to after-acquired title, for which see a discussion in 62 A. L. R. 480, and annotations. This was applied in Schmidt v. Palisade, supra.

The effect of these well-known rules is to say that where a person has attempted to plat and dedicate, even if it be admitted that the attempt fails to meet the statutory scheme as urged by defendants in this case, it nevertheless amounts to the creation of a status which if followed as a general plan of development and is known, as the evidence clearly indicates in this case, gives basis for the enforcement in equity of the restrictions and enforceable covenants imposed. Thus we are relieved of the necessity of determining precisely whether the attempt to plat and dedicate Crestwood addition is legal within the meaning of our statutes for the failure to first have vacated Jones Park addition according to the requirements of our statute. Equity will recognize and enforce the mutual and reciprocal rights involved.

We are, of course, taking into account the rule that restrictions are in derogation of the free ownership of property and are to be strictly construed and applied. This is a rule stated in the Oklahoma decisions cited above. Nevertheless, that rule is not broader or stronger than the rule that if the restrictions are definite and are known they will be applied by the courts despite the repugnance spoken of.

Consideration of our opinion in Magnolia Petroleum Co. v. Drauver, supra, will clearly show this. Reference to the facts and issues there will be helpful here, since the lots involved in that action are a part of Crestwood addition and have the same history. This tract of land (now Crestwood addition) was first platted as Ellis Place addition and contained restrictions against use for business. Lots were sold in this addition, affected by the restrictions, free of the mortgage lien theretofore placed on the lots. Thereafter this mortgage was foreclosed and all of the lots in the addition subject thereto were sold at judicial sale. Thereafter the identical tract of land was replatted as Jones Park addition (preserving the boundaries of the lots sold in Ellis addition prior to the foreclosure) but without the imposition of the restrictions imposed on Ellis addition, and still later the same tract was replatted as Crestwood addition and the restrictions herein being considered were imposed. The issue in that case turned on whether the judicial sale on the foreclosure of the mortgage served to release the lots so sold from the restrictions imposed on them at the time of the platting of Ellis addition. In other words, the issue was whether the owners of the lots sold prior to the foreclosure and subject to the restrictions could enforce an observance of those restrictions as against owners who purchased after the foreclosure sale. We pointed out that the record in that case clearly showed (as it does in this case) that a general plan of development had been followed and that the restrictions imposed on Ellis addition and presumably imposed on Crestwood had been recognized and observed, and said:

"If such restrictions are to become inoperative as between the owners of the lots sold free from the mortgage, then some circumstances must be shown from which it may be determined that the restrictions have been renounced or abandoned by the owners of such lots to that degree where the enforcement thereof by the owners inter sese would be inequitable, or that a change of conditions has intervened."

Further, after stating that this court recognized that restrictions are in derogation of free ownership and use of property, and are not generally favored by courts, and will be strictly construed, we nevertheless recognized the accompanying rule, when we said:

"But, if restrictions in a dedication of a townsite are clearly expressed, and are not repugnant to positive law, they are binding upon all parties purchasing the land. However, it should be remembered and taken into account that such restrictions as here considered are not intended wholly to deprive the grantees of some specified beneficial use of the property, but are intended primarily to redound to the mutual benefit and profit of the owners of the land. Southwest Petroleum Co. v. Logan, 180 Okla. 477, 71 P. 2d 759. Restrictions of the character here considered could be meant for nothing other than for the common benefit of the purchasers of the lots. The purchasers having assented to such restrictions, they and their assigns may ordinarily enforce them inter sese for their own benefit."

We think the analogy between that case and this is complete, and that what was said there is virtually determinative of the similar issue in this case.

Considering the rules of law above stated and the evidence in this case, we are of the opinion that the restrictions imposed upon the use of the lots in block 2 of Crestwood addition were established in a manner sufficient to be enforceable in equity, that the defendants in this action had full notice thereof, and that their first contention is without merit.

It is next contended that the plaintiffs were guilty of laches and for this reason should have been barred from any relief. The basis for the contention so made rests upon the fact that plaintiffs did not appear before the adjustment board and resist the application of the defendant A. G. Williamson to have block 2 placed in a business zone. We are of the opinion that the evidence does not fully support this contention. Others having the same interest and acting with plaintiff's knowledge and assistance appeared and resisted. It appear-

ing, therefore, that defendant Williamson obtained a building permit about September 10, 1940, and that prior to the commencement of any work on the premises here involved, actions were brought against him by two other residents of the district, followed by the commencement of the present action by the plaintiffs on October 11, 1940. This should have been ample notice to the defendants of the intention of the residents of Crestwood addition to resist his attempts to erect and operate business properties therein, and shows an absence of laches on the part of the plaintiffs.

It is next contended that the restriction in the plat and dedication, if ever effective, had been outmoded by changing conditions. In support of this contention it is urged, in substance, that since the plat was filed business areas have come into being in sections of the city not contemplated at the time the property here involved was platted, and that since the evidence disclosed that such business districts have grown up in the neighborhood of the property here involved, this should be sufficient to justify the court in releasing the affected property from the covenant. In the case of Van Meter v. Manion, 170 Okla. 81, 38 P. 2d 557, we said:

"Plaintiff was the owner of a corner lot in an addition to Oklahoma City restricted by a plat restriction to use for residential purposes only. A judgment of the trial court ordering that a permit issue to erect a business building on said lot on account of a change of conditions in the neighborhood surrounding said restricted area is contrary to the clear weight of the evidence where it is shown that there was no purpose or plan on the part of the residents of the restricted area to abandon the original scheme or purpose of creating an exclusive residential section, and where the evidence as to a change of conditions is not sufficient to show that the original purpose cannot now be accomplished, and where it is shown that substantial benefits still inure to the residents of the restricted area by the enforcement of the restrictions.

"The fact that traffic has increased on streets surrounding a restricted area may be considered as evidence showing a change of conditions, but is not sufficient to warrant the releasing of affected property from a restrictive covenant.

"The lot of plaintiff cannot be considered separate and apart from its relation to the entire restricted addition. The fact that plaintiff's lot is more valuable for business purposes than residential purposes is not sufficient to warrant a breach of the restrictions."

What we said in the foregoing case we think is a complete answer to the third contention of the defendants.

It is finally contended that since defendants have expended a large sum of money in improving the property here involved for business purposes, the equities should be balanced and held to preponderate in favor of the defendants and injunctive relief denied. In support of this contention we are cited to Tulsa Creamery Co. v. Tulsa Milk Products Co-Operative Ass'n, 175 Okla. 51, 51 P. 2d 950, which is authority for rule that consideration may be given to the comparative injury which would result from the granting or refusing of an injunction. Such rule has no application to a situation such as that here presented, since under the record it appears that any inequality in conditions have been brought about by the acts of the defendants against the wishes and efforts of the plaintiffs.

The cause being one of equitable cognizance, we have read and examined the entire record and are unable to say that the judgment below is clearly against the weight of the evidence.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, GIBSON, and HURST, JJ., concur. RILEY, DAVISON, and ARNOLD, JJ., absent.