CHRIST'S METHODIST CHURCH
v. MACKLANBURG et al.

No. 32746.  March 4, 1947.

177 P. 2d 1008.

Dudley, Duvall & Dudley and J. B. Dudley, all of Oklahoma City, for plaintiff in error.

Halley, Douglass & Felix, of Oklahoma City, for defendants in error.

GIBSON, J. The parties to the appeal occupy the same relative position as in the trial court, and will be herein referred to as plaintiff and defendants.

The question here involved is the effect of a restriction against use of lots in a platted addition for other than residential purposes, and particularly whether a church as purchaser of the lots is entitled ot erect and maintain thereon a church notwithstanding such restriction. The restriction involved is applicable to lots in Lincoln Terrace addition, an addition to Oklahoma City, comprising an acreage of 97½ acres, subdivided into streets, avenues and 23 city blocks. A triangular block at the intersection of avenues near the center is dedicated to the city for park purposes. The lots in the other blocks are all restricted to residential purposes except certain lots and blocks excepted therefrom by the express terms of the restriction. The addition was laid out and platted by the filing of three plats, each covering parts thereof, on January 28, 1926, November 10, 1926, and February 26, 1927, respectively. The restriction covering blocks 7 to 23, which includes the lots here involved, was included in the plat filed in January, 1926, and is in the following words:

"All lots in this plat are restricted to residences only, except Lots 10 to 17, inclusive, Block 17, on which apartments may be erected, and all of Block 20 on which retail business buildings or apartment houses may be erected."

In each of the other plats, which together covered the balance of the area, there are the following restrictions:

"All lots in this plat are restricted to residences only."

The addition is almost wholly developed and has an estimated population of 5,000. The improvements heretofore made are in complete accord with the restrictions.

Block 10 of the addition lies immediately south of Nineteenth street and immediately east of Lincoln Boulevard. The south tier of the lots in said block which face south on Eighteenth street are owned and occupied by the defendants for residential purposes. The north tier of the lots therein whereon there are no improvements are the lots involved herein.

During the latter part of 1945 the plaintiff, a corporation organized for religious purposes, acquired title to said north tier of lots in block 10, and, having received municipal permission to erect thereon a building for public worship at an estimated cost of $200,000, posted and advertised its intention so to do. Defendants, through counsel, called plaintiff's attention to the plat restrictions and, insisting that such erection would be unlawful, warned that injunctions would be sought if erection of the church building were attempted. Thereupon plaintiff instituted this action.

The plaintiff's petition recites the foregoing facts, the fact that there is no other suitable site within the addition, that such site would afford a convenient place for its congregation, consisting of persons residing both within and without the addition. The prayer of the petition is to judicially establish the right of the plaintiff as against said restriction to erect and maintain on the premises the contemplated church structure and quiet plaintiff's right to do so against the claims of the defendants.

The trial court sustained the demurrer of defendants to the petition upon the ground the same did not state a cause of action, and plaintiff electing to stand on its petition, its action was dismissed. It is from the order of dismissal plaintiff prosecutes this appeal.

There are but two basic questions involved in this appeal. First, is the proposed use of the premises for church purposes within the inhibition of the restrictive provision under which title thereto is held? and, if so, second, is the provision void or unreasonable to the extent it prohibits the plaintiff from erecting thereon and maintaining the proposed edifice for public worship?

Concerning the first question, it is urged on behalf of plaintiff that the use of lots for churches is not expressly prohibited and, therefore, the fact of their prohibition can arise only by implication which, being inconsistent with the applicable rule of strict construction, will not be indulged by the court. It is recognized that this court has repeatedly held that while convenants restricting the use of real property are not favored, they will nevertheless be enforced by the courts where the intention of the parties is clear in their creation and the restrictions or limitations are confined within reasonable bounds. Plaintiff quotes from the opinion of this court in Southwest Petroleum Co. v. Logan, 180 Okla. 477, 71 P. 2d 759, wherein the court construed the reservations involved therein, the following:

"The phrase, 'All lots in this plat are restricted to residences only,' excludes all other uses upon the land, and is clear and unambiguous. Under the natural and common sense meaning of the term 'residences' we cannot say that the drilling of wells for oil and gas is a use of property for residence purposes. It does not matter that the parties did not anticipate the oil development in this area and contemplate the necessity of excluding the drilling of oil wells in the addition when it is clear that they intended to exclude every use not pertaining to residence purposes"

—but contends it is not controlling here. It is urged that the expression is dictum when applied to the facts of the instant case.

The basis of the conclusion in the cited case is the holding that by the terms of the restriction there was an express exclusion of all uses other than

the prescribed use. The proposed oil development was held to be excluded not because it was oil development but because such use was not residential. The standard there used is no less applicable here. And, if applied, it would necessarily follow that the use for church purposes is excluded because not residential in character.

All the contentions made herein material to the intention as expressed in the restrictive language were presented and considered in the quoted case. We adhere to the construction there applied and hold that the restriction by force of the language used denies the right to use the premises for church purposes.

Plaintiff's argument pertinent to the second question is briefed under the following proposition:

"The sources of the public policy of the state are its Constitution, laws, judicial decisions of the Appellate Courts, the common law, and the traditions of its people. If the plat restrictions involved prohibit the building of a church and the use, maintenance and operation thereof for religious purposes, they are unreasonable, against the public policy of the state and void, and should be stricken down."

It is urged on the strength of holdings quoted from this and other jurisdictions that:

"The general rule, state and federal, as to the sources of the public policy of a state are its Constitution, laws, including the common law, judicial decisions, and the traditions of its people."

And among holding of courts of other jurisdictions to like effect, supporting such deduction, there is quoted from Union Central Life Ins. Co. v. Champlin, 11 Okla. 184, 65 P. 836, the following:

" 'Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free from definition in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void, as being against public policy.' . . .

" 'Where a contract belongs to a class which is reprobated by public policy, it will be declared illegal, though in that particular instance no actual injury may have resulted to the public, as the test is the evil tendency of the contract and not its actual result.' " *

Plaintiff asserts:

"The average, ordinary Oklahoma citizen, man or woman, is nationally religiously inclined and believes in the fundamental principles of Christianity, and that these principles are essential to an orderly government and the general welfare of the people as a whole. He or she also instinctively believes that the churches and religious organizations are essential to the maintenance, preservation, promotion and development of these fundamental principles. The feeling and belief of the average, ordinary man or woman of one section of the state runs throughout the entire state, and from this we get as a tradition of the people the public policy of the state as applied to religion and religious organizations. The church is the only organization which affirms the existence of the human soul and endeavors to ennoble it. Such an organization plays no small part in the civilization of the state and the general welfare of its citizens, social, moral or otherwise."

And it is also said:

"The site is ideal for a church and has but little value for residential, business, or other purposes, and the building of a modern church upon this site would not harass, annoy, disturb or harm the defendants, and other lot owners in said addition, in the use of their properties for residential purposes. If, however, the building and use of this church might disturb them in the quiet of their homes, this right should yield to the public good as a part of the public policy of this state."

It is further declared that if the restrictions may be asserted to prohibit

the building of churches, they also prohibit "schools, public or private, hospitals, libraries, and structures and institutions of this type."

A parallel cannot be drawn between the establishment of the plaintiff's church and that of a public school in the addition.

The matter of the establishment of a public school (Const. art. 13, § 4) is within the sovereign power of the state, and the exercise thereof may be accomplished through condemnation. By reason of constitutional limitations, both state and federal (Const. art. 1, § 2, and 1st Amend. U. S. Const.), reflecting what may be termed the separation of church and state and religious liberty of the individual citizen, the state cannot establish churches, condemn land therefor or compel church attendance.

Hence under the law the church does not occupy the vantage point of a school and cannot have recourse to condemnation. Such being true, the right of the church to acquire property rests on no higher ground than that of any other citizen.

While, as heretofore declared, the words "public policy" cannot be given a definition which will afford a standard for application in the manifold situations that arise, we do know that it is always in accord with the purpose and spirit of the law and that only those claims which are consonant therewith can be within, and that those claims not so consonant are without, the purview of the protection to be afforded thereby.

In Baltimore & Ohio Southwestern Ry. Co. v. Voight, 20 S. Ct. 385, 176 U. S. 498, 44 L. Ed. 560, it was said:

". . . It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy unless it clearly appear that they con-travene public right or the public welfare."

In Anderson v. Reed, 133 Okla. 23, 270 P. 854, we said:

"We agree with these authorities, but, after all, we find the rule in Owens v. Henderson, 185 Ky. 477, 215 S. W. 90, that only those contracts are against public policy which tend clearly to injure public health, morals, or confidence in the administration of law, or to undermine security of individual rights, whether of personal liability or private property."

If the restriction under consideration is void on the ground of public policy, it has been so from its inception. If valid, the plaintiff as purchaser took subject to it, and the demand that the right enjoyed under the restriction be subordinated to that of the purchaser could not be countenanced by public policy because it would be nothing less than a condemnation without authority of law.

The pleading that the restriction is void is not predicated on any facts that the restriction as such did, or tended directly to, injure the spiritual health, morals or confidence of the public. The sole injury pleaded and the basis therefor is the inconvenience to be suffered in not being able to purchase the desired site free from the restrictions.

At no time did there exist in the church the right to purchase the property of another except upon such terms as would empower the other to lawfully and willingly sell. In Vaughn v. Lyon, 122 Okla. 179, 252 P. 1088, we said:

"We take it that the law is well settled that, where there is a general plan or scheme for the improvement or development of any particular tract of land, which scheme or plan is designed to make it more attractive for residential purposes by placing certain restrictions upon the individual units of the property, either in the dedication of the plat covering same or in the deeds by which title is conveyed, the owner of one lot may enforce such restrictions against the owner or occupant of an-

other lot. Scharer v. Pantler, 127 Mo. App. 433, 105 S. W. 668; Boyden v. Roberts, 131 Wis. 659, 111 N. W. 701; Baker v. Lunde, 96 Conn. 530, 114 Atl. 673."

In light of the facts alleged, we hold that the prime purpose of the restriction was solely to make the area of the addition attractive for residential purposes, that such purpose was both lawful and reasonable, and that it is enforceable by the defendants as owners of lots therein.

Our conclusion that churches as purchasers take subject to such restriction appears to be in accord with the holdings in other states. We have been cited to no decision of a court of last resort where it was held such restriction was not binding on churches. On the other hand, there is called to the court's attention the following decisions which are in accord with our conclusion:

St. Andrew's Lutheran Church's Appeal, 67 Pa. St. 512; Scott Co. v. Roman Catholic Archbishop, etc., 83 Ore. 97, 163 P. 88; Hisey v. Eastminster Presbyterian Church, 130 Mo. App. 566, 109 S. W. 60; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40, S. W. 2d 545; Cleveland Baptist Ass'n v. Scovil, 107 O. St. 67, 140 N. E. 647; Renfroe v. Alden, 164 Ga. 77, 137 S. E. 831; Evangelical Lutheran Church of the Ascension etc. v. Sahlem, 254 N. Y. 161, 172 N. E. 455; Strauss v. Ginzberg, 218 Minn. 57, 15 N. W. 2d 130; Finn v. Emmaus Evangelical Lutheran Church, 329 Ill. A. 343, 68 N. E. 2d 541; Proetz v. Central Dist. of Christian & Missionary Alliance (Mo.) 191 S. W. 2d 273; Johnson v. Mt. Baker Park Presbyterian Church, 113 Wash. 458, 194 P. 536; Reeves v. Morris, 155 Kan. 231, 124 P. 2d 488; Cannon v. Ferguson (Tex. Civ. App.) 190 S. W. 2d 831.

In legal effect, the situation here is, so long as the restriction is in force, the willingness and consent of those who have rights thereunder is as necessary as that of the owner of the lots to carry the full title the plaintiff desired. And, hence, where one jointly interested in the subject of sale objects and refuses to join therein, such objection is no basis for legal action by a disappointed would-be purchaser.

The erection of plaintiff's church upon the lots would be in violation of a valid restriction upon which the defendants are entitled to and do rely. The restriction existed on the right of plaintiff's grantor and the plantiff as grantee took subject thereto.

Affirmed.