W. B. BUCK, Earl Pendley, E. W. Luker,
J. M. Daviee, M. C. Tate, Lee A. Long,
J. W. Smith, Luke D. Waner, George T.
Jackman, Roy L. Fairchild, Wade Ramzy,
and I. F. Carson, Plaintiffs in Error,

v.

Gertrude DUNN and The First Baptist
Church of Oklahoma City, a religious
corporation, Defendants in Error.

No. 36157.

Supreme Court of Oklahoma.

Sept. 28, 1954.

Rehearing Denied Oct. 19, 1954.

Phil E. Daugherty, Oklahoma City, Ames,
Daugherty, Bynum & Black, Oklahoma
City, of counsel, for plaintiffs in error.

A. C. Hough, Brown, Darrough & Darrough, Darrell Winings, Oklahoma City, for defendants in error.

DAVISON, Justice.

This is a proceeding whereby Gertrude Dunn and the First Baptist Church of Oklahoma City, a religious Corporation, seek to vacate, under the provisions of 11 O.S.1951 § 523 et seq., a portion of the plat of Park Estates, Burdick and Cutler's Additions to Oklahoma City, Oklahoma. The relief sought was that said portion of said plat be vacated and the property restored to its unplatted condition without restrictions. To said application, W. B. Buck, Earl Pendley, E. W. Luker, Roy L. Fairchild and Wade Ramzy, by leave of court, filed a Protest and Petition for Injunction, seeking an order prohibiting said applicants from constructing a church upon the property described in the application. The parties will be referred to as applicants and protestants, as they appeared in the trial court.

■■ It was alleged in the application that the designated portion of said addition had never been used by the public but was, and had been, for more than five years, occupied adversely to the public, giving the court jurisdiction, under the provision of 11 O.S.1951 § 524, to vacate said portion of said plat, provided the rights and privileges of the other proprietors were not abridged or destroyed. Those rights include the benefits from restrictive covenants. Williamson v. Needles, 191 Okl. 560, 133 P.2d 211.

Protestants found their protest and their right to injunctive relief upon restrictive covenants contained in a recorded Owner's Certificate and Restrictions of Park Estates and the amendments thereto. By reply, applicants specifically denied the violation of, or intention to violate, any of said restrictive covenants. Upon trial of the issues, the court found that the applicants planned the erection of a church upon the designated property and that protestants sought to enjoin its erection as being in violation of restrictive covenants running with the land. The injunction was denied upon the ground that the building of a church was not pro-hibited by the restrictions. Vacation of the plat as to the property involved was also ordered. From that judgment, protestants have perfected this appeal.

The evidence contained in the record amply sustains the allegations in the application and the judgment of the court finding them to be true, that said portion of said platted tract had never been used by the public but had been enclosed and occupied adversely to the public for more than five years. The existence of those facts warranted the court in vacating that portion of the plat. 11 O.S.1951 § 524; Bohnsack v. Ponca City Development Co., 167 Okl. 177, 29 P.2d 61; Town of Orlando v. Stevens, 90 Okl. 2, 215 P. 1050.

■■ The remaining proposition, in the case now before us, is not so easily determined. Churches stand in the same position as other purchasers and their ownership is subject to the same valid restrictions. Christ's Methodist Church v. Macklanburg, 198 Okl. 297, 177 P.2d 1008. Thus, the applicant herein, having acquired the property after the imposition of restrictions, is bound thereby to the same extent as other owners. But restrictions as to the use of property are to be strictly construed. Nothing will be taken by implication or intendment, nor will any condition be inserted by construction. The intention of the parties will be gathered strictly from the terms employed. Test Oil Co. v. LaTourette, 19 Okl. 214, 91 P. 1025; Turk v. Wood, 202 Okl. 112, 210 P.2d 662, 665.

In the last above cited case the following rule from 26 C.J.S., Deeds, § 163, pp. 517–518 was adopted and approved:

" 'The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms, even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written.' "

The restrictions which we are called upon to construe were contained in said Owner's

Certificate and Restrictions of Park Estates. As amended, they provide:

"(3) Only single-family detached residences etc. of a certain size should be constructed on any one lot.

"(8) No building or structure of any sort may be placed, erected or used for business purposes on any of the lots * * * except on Lots etc.

"(9) No professional office, business, trade or commercial activity of any sort may be conducted in any residential structure or on any lot * * * except on Lots etc.

"(12) All cows, horses, goats, ponies etc.

"(13) (a) No single family residence, together with other improvements costing less * * * shall be permitted on etc.

"(b) No single family residence (same as (a) except as to amount) etc.

"(c) No single-family residence (same as (a) except as to amount) etc.

"(14) Sixty (60%) percent of the exterior surface walls etc.

"(15) Easements for utility installation etc.

"(16) These covenants are to run with the land etc.

"(17) Should the owner * * * violate etc.

"(18) Invalidation of any one of these covenants etc."

It will be noted that only paragraphs numbered 7 to 11 prohibit the use of the property for any purpose. Obviously, none of these uses include church purposes unless, it would come within paragraph 8, "business purposes." Although this court has not heretofore expressed itself on the matter, it seems rather universally accepted that "A restrictive covenant against the use of property for any business purpose is not violated by the erection of a church building." 14 Am.Jur. 625, (rewritten in pocket part sec. 225.) In the case of Wiggins v. Young, 206 Ga. 440, 57 S.E.2d 486, 487, 13 A.L.R.2d 1237, in passing on a restriction very similar to the restrictions in the instant case, said:

"A church is a building consecrated to the honor of God and religion, with its members united in the profession of the same Christian faith. Josey v. Union Loan & Trust Co., 106 Ga. 608, 611, 32 S.E. 628. Under the general rule that the owner of land in fee has the right to use his property for any lawful purpose, and any claim that there are restrictions and limitations in the use of such property must be clearly and indubitably established, Randall v. Atlanta Advertising Service, 159 Ga. 217, 218, 125 S.E. 462; Kitchens v. Noland, 172 Ga. 684, 158 S.E. 562; Thompson v. Glenwood Community Club, Inc., 191 Ga. 196, 12 S.E.2d 623, the restriction against the use of property 'for any business purpose,' as contained in division (d) of the restrictive covenants, is not violated by the erection of a church building."

Therefore, in the case at bar, there is no restriction against the building of a church unless it is contained in paragraph (3). That entire paragraph is as follows:

"Only single-family, detached residences, not to exceed two stories in height, servant's quarters not to exceed a floor area of three hundred (300) square feet, and a private garage for not more than three (3) cars, may be constructed and/or located on any of the Lots in Park Estates, Cutler's Addition or Burdick Addition, described hereinabove, except Lots Five (5) to Twelve (12), both inclusive, in Block Twenty (20); and lots Five (5) to Nine (9), both inclusive, in Block Twenty-one (21) are hereby specifically reserved for duplexes, multiple-family apartments, and/or business purposes."

Considering that paragraph in the light of the rules of law above, it must be strictly construed and it cannot be made restrictive by implication. It will be noted that the persons who established the restrictions did

not interpret the paragraph as prohibiting business buildings or residential offices for professions because other paragraphs were included to prohibit the latter specifically. If paragraph (3) was intended to restrict all buildings in the addition to residences, then the prohibition of business buildings by paragraph (8) was unnecessary and a surplusage. Our interpretation of paragraph (3) is that it was intended to provide that "In building residences in the addition, only single-family detached residences not to exceed two stories * * * may be constructed and/or located on any of the Lots * * *."

By such interpretation the building of any other structure must be governed by other parts of the instrument. Business buildings are, certainly, otherwise prohibited. Nowhere, however, is the building of a church prohibited. We conclude that the provisions of the restrictions did not include the building of a church and that the trial court was correct in so holding. This conclusion is not in conflict with the case of Christ's Methodist Church v. Macklanburg, supra [198 Okl. 297, 177 P.2d 1009], because in the reported case the restrictive covenant provided that " 'All lots in this plat are restricted to residences only.' " Nothing in the instant case is similar to such a clear and explicit restriction.

The judgment is affirmed.

HALLEY, C. J., and WELCH, ARNOLD, O'NEAL and BLACKBIRD, JJ., concur.

JOHNSON, V. C. J., and CORN and WILLIAMS, JJ., dissent.

CORN, Justice (dissenting).

Proper consideration of the question here presented requires a more comprehensive consideration of the instruments setting forth the restrictive covenants which we are called upon to construe in this case.

The original Owner Certificate and Restrictions (of the named additions) executed by the covenantors recited: (after describing the property)

"For the purpose of providing an orderly development in all of the lots (in the additions comprising this development) * * *, and for the further purpose of providing adequate restrictive covenants for the benefit of ourselves, and our successors in title to the aforesaid sub-division of said additions, * * * do hereby impose the following restrictions and reservations to which it shall be incumbent upon our successors in title to adhere, and any person or persons, corporation or corporations, hereafter becoming the owner or owners, either directly or through any subsequent transfers, or in any manner whatsoever of any Lot or Lots, Block or Blocks, or tract of land included in the above described Park Estates Addition and/or Cutler's Addition and/or Burdick Addition, shall take, hold and convey same, subject to said restrictions and reservations, which are as follows, to-wit:

"(Summarized these provide)

"1. No building to be erected upon any lot until plans and specifications approved by majority of a (named) committee for conformity and harmony of design and proper location.

"2. No person of any race other than Caucasian or American Indian to own and occupy property.

"3. Only one single-family detached residences, not to exceed two stories in height, and a private garage for not more than three cars may be constructed and/or located on any of the Lots in Park Estates Addition, Cutler's Addition, or Burdick Addition, except that this paragraph shall not be construed as a prohibition on the construction of servant's quarters where the floor area of same does not exceed three hundred (300) square feet.

"4. Limits construction according to established building set back lines.

"5. No wall or fence to be constructed forward of established front building line.

"6. Deals with location of buildings in respect to side building lines.

"7. Prohibits building of cess pools.

"8. No building to be used for business purposes permitted upon any lot.

"9. No professional office, business, trade or commercial activity allowed in any residence.

"10. No offensive trade or activity permitted upon any lot.

"11. No trailers, shacks to be used as temporary residence upon any lot.

"12. Cows, horses, goats, mules, hogs, prohibited from being kept upon any lot.

"13. (a) No single family residence costing less than $10,000 permitted upon certain lots in the additions (describing same by lot and block number).

"(b) No residence upon certain other enumerated lots to cost less than $7500.

"(c) No residence costing less than $6000 to be permitted upon any lot not enumerated in sub-divisions *a* and *b*.

"14. Requirements as to type of exterior construction to be used.

"15. Reserves easements for construction and maintenance of utilities.

"16. Provides that covenants run with land and are binding upon all parties.

"17. Provides for means and nature of proceedings against any owner violating restrictions or breaching covenant."

This certificate and restriction was executed and recorded April 15, 1946.

Subsequently the covenanting parties recorded (October 10, 1947) an Owners' Certificate and Amended Restrictions covering this development. This instrument recited the owners of lots in the additions and declared the intention to amend the original restrictive covenants by striking out and nullifying paragraphs 3–4–6–8–9–13a, b, c, of the original instrument and substituting the following amendments; (the substance of which is as follows):

"3. Only single-family, detached residences, not to exceed two stories in height, servant's quarters not to exceed a floor area of three hundred (300) square feet, and a private garage for not more than three (3) cars, may be constructed and/or located on any of the lots in Park Estates, Cutler's Addition or Burdick Addition, described hereinabove, except Lots Five (5) to Twelve (12), both inclusive, in Block Twenty (20); and Lots Five (5) to Nine (9), both inclusive, in Block Twenty-One (21) are hereby specifically reserved for duplexes, multiple-family apartments, and/or business purposes."

"4. Amended, corrected and explained the building front set back line restriction.

"6. Amended, corrected and explained the set back line on the side boundary lines.

"8. Excepted Lots 5–12, inclusive, in Block 20, and Lots 5–9, inclusive, in Block 21 from restrictions and made same available for business purposes.

"9. Restricted addition against any professional office, business, trade or commercial activity except upon the Lots mentioned in paragraph 8, above.

"13. (a) No single family residence, together with other improvements, costing less than $10,000 shall be permitted on any of the following described lots: This paragraph then enumerates by lot and block number each building site covered thereby and among these specifically mentioned are Lots 14–16 in Block 20, and Lots 1–3 and 11–13 in Block 21.

"(b) This paragraph contains the same restriction but fixes minimum cost at $7500 and enumerates the lots at which such restriction is directed, specifically mentioning Lots 1–4 inclusive, and Lot 13 in Block 20, and Lots 4–10, inclusive in Block 21.

"(c) This paragraph specifies that no residence in the development may cost less than $6000 and states that it is the intent of the restrictive agreement to cover all lots not specifically enumerated."

The amended certificate then provides that the original certificate and restrictions was not amended or changed except as set forth above.

The majority opinion attempts to justify the conclusion reached upon two grounds. First, by application of certain rules of law relating to interpretation of restrictive covenants, to the exclusion of other equally sound and applicable rules. Second, by a strained construction of the language used in the instrument, since it fails to accord to a word of common usage its customary and obvious meaning. The ultimate result of the majority opinion is the enunciation of a rule of law directly in conflict with our prior decision in Christ's Methodist Church v. Macklanburg, 198 Okl. 297, 177 P.2d 1008. Thus this court finds itself in the unfortunate position of having announced diametrically conflicting rules of law in cases involving practically identical fact situations, based solely upon the significance attached to the placement of a word of common usage and obvious meaning.

The rules of construction applied in the proposed opinion are: (1) restrictions upon the use of real property are not favored in the law; (2) covenants must be strictly construed, nothing may be taken by implication or intendment and no condition may be inserted by construction; (3) the intention of the parties is to be gathered from the terms employed. Test Oil Co. v. LaTourette, 19 Okl. 214, 91 P. 1025; Turk v. Wood, 202 Okl. 112, 210 P.2d 662.

The foregoing rules of construction are generally recognized. However, there are other rules of equal import which must be recognized and applied in such situations. One rule of singular importance is stated by Berry, Restrictions of Use of Real Property, Sec. 34, as follows:

"The primary rule for the interpretation of restrictive covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met."

And, the following rules likewise must be applied in such cases: (1) The intention of the parties must be given effect; (2) the words used in the instrument must be taken in their ordinary sense, or, the language used must be given its obvious meaning; (3) if there is any doubt as to whether a certain provision creates a covenant or a condition, it will be construed to be a covenant; (4) the rule of strict construction in favor of the free use of property should not be applied so as to defeat the purposes of the restriction. See Am.Jur., Covenants, Conditions and Restrictions, Sec. 210 et seq. Thus it fairly may be concluded that the instrument herein considered should be construed in the light of all applicable rules, rather than only by those which are in derogation of the rights of the parties relying thereon. See also Christ's Methodist Church v. Macklanburg, 198 Okl. 297, 177 P.2d 1008.

In construing this covenant the majority opinion states that the persons who established the restrictions did not interpret paragraph 3 as prohibiting business buildings or residential offices because later paragraphs were included to specifically prohibit the latter. On such reasoning it is asserted that if paragraph 3 was intended to restrict all buildings in the addition to residences, then paragraph 8 was surplusage. Upon this basis the opinion concludes the meaning of the language employed was that the covenantors intended the limitation to apply to the type of residence constructed. Thus it is observed that the opinion considers and treats the word "only" in the nature of an adjective, and in this manner is able to construe the language as a limitation upon the type of construction, rather than a covenant against the use of the premises for other than residence purposes. Such an interpretation utterly disregards the declared intention of the parties, which was expressed in the Owner's Certificate and Restriction of Plat as follows:

"For purpose of providing orderly development * * * and for further purpose of providing adequate restric-

tive covenants for benefit of ourselves, and our successors in title, * * * do hereby impose the following restrictions and reservations * * *".

In Christ's Methodist Church v. Macklanburg, supra [198 Okl. 297, 177 P.2d 1009], we upheld a restrictive covenant phrased as follows: " 'All lots in this plat are restricted to residences only.' " Herein the restrictive covenant reads: "(3). * * * Only single-family, detached residences * * * may be constructed and/or located on any of the Lots * * *." The apparent difference between the language of these restrictive covenants appears in the use and placement of the word "only". The majority opinion reaches the conclusion that the word was used as an adjective, and thus was a limitation as to the type of residences which could be constructed. Undoubtedly this conclusion was reached solely by reason of the position of the word itself, and without regard to the true form and meaning of the word.

Webster's New International Dictionary (2d ed.) (1950 issue) @1703, has this to say about the word only. "Used as an adverb: 1. No other or nothing more or other than; for no other purpose; exclusively, solely. Only as an adjective is used as a dialectical or poetic intensive superlative. 2. Alone in its or their class; without others of the same class or kind; sole, single; as, the only man present."

The Oxford English Dictionary has this to say about the word only. "A. adv. 1. as a single or solitary thing or fact; no one or nothing more or else than; nothing but; alone; solely, merely, exclusively. Only may limit the statement to a single or defined person, thing, or member (a) as distinguished from more, or (b) as opposed to any other."

How to Speak Better English, Lewis, (Thomas Y. Crowell Co. 1948) pp. 277–78, gives two adverbial uses of the word. "1. I only see him once a week." To be grammatically correct in structure the sentence should read "I see him only once a week." In the former it might be contended if you only see him then you cannot feel or smell him or hear him. Nevertheless, there is no doubt as to the meaning of the first sentence and, according to this authority (Lewis), any hairsplitting over the placement of the word is "unadulterated Tommyrot." Lewis likewise quotes another authority (Perrin-Coalgate University) to the effect that: "The importance of the position of (the word) only has been greatly exaggerated." Placing only before the verb is a characteristic and reputable English idiom.

Thus, purely from the standpoint of grammatical consideration, it is difficult to understand how any construction can be placed upon the word "only" as used in paragraph 3, except that it restricts the construction to nothing other than residences and does not permit erection of any other kind of building.

Turning to the instrument itself in an effort to construe same under the applicable rules of construction, the declared intention of the covenantors (set out above) must be considered as fully as the particular paragraph giving rise to this controversy. Paragraph 3 of the original instrument provided that only one single family residence (with the same limitations concerning type or style of construction) could be constructed upon any of lots in these additions. Paragraph 8 prohibited erection of any structure for business purposes, while paragraph 9 extended the restrictions against the conduct of any professional office in any residence in the additions. It does not admit of argument but that the covenantors were carrying out their expressed intention of providing for an orderly development of that which was conceived and intended to be strictly a residential area. However, under the interpretation of the majority opinion and in spite of the express declarations of the instrument, it would be impossible to consider that the original restrictions limited development in these additions to residences only, except for the restrictions contained in paragraphs 8 and 9 against any business structure, and against conduct of trade or commercial activity in any residence. Application of the theory expressed by the majority opin-

ion means that, despite the announced restrictions in the original instrument against *any buildings other than residences* in these additions, it would have been possible to erect a private club, a public playground for underprivileged children, or that a building could have been erected by some charitable organization for the purpose of caring for the ill and indigent, if not operated as a commercial activity.

The foregoing is noteworthy in view of the construction placed upon the amended restrictions. The identical language of the original restriction appears therein, except for changes in some restrictions not material herein and for the changes which appear in paragraphs 3–8–9–and 13. The original, absolute restriction against any buildings other than residences was relaxed by permitting certain designated lots to be used for apartments, duplexes and business buildings. From paragraphs 8 and 9 the absolute prohibitions were removed to permit the use of these designated lots for business buildings, or by permitting the carrying on of professional and/or commercial activities in structures located thereon. Rather than concluding that repetition of the exception in the three paragraphs was mere surplusage which evinced an intention not to restrict the additions solely to residences, it seems much more logical and reasonable to construe the instrument as meaning that the covenantors were making every effort to explicitly define the areas, and make these the only locations, where structures other than residences could be erected.

Such interpretation is doubly justified when these paragraphs are considered with paragraph 13a, 13b, and 13c. These provisions carried the original restriction "No single family residence, together with improvements" (costing less than the amount specified in subdivisions a–b–c) could be built in these additions. It is particularly enlightening to observe the specific limitation to single family residences, but it is more impressive to note that while the covenantors enumerated each building site upon which a residence of a particular price class was to be built, they just as carefully excluded those building sites upon which the restrictions were removed to allow buildings other than single residences. And, included among those specified as building sites for single family residences (in both price ranges) are certain lots upon which applicants sought to vacate the plat restrictions.

What we observed concerning application of the rule of the majority opinion relative to the original instrument applies with equal force when considering the intent and meaning of the amended restrictions. Under this interpretation there is no restriction against use of any building site, not excepted for business purposes, since the language of paragraph 3 is construed as defining only the general type or kind of building to be erected. Thus it is seen that the effect of the opinion simply will be to permit erection and use of a building upon lots reserved for residences for purposes which are not business, but could not be said, under this restriction to be within the exclusions against trade or commercial activity. Examples of such uses could be found in an orphans home, or in a structure used as an animal shelter.

One further argument discloses the fallacy of the interpretation relied upon. The opinion points out the exceptions of certain lots (particularly described) for business purposes. Then, since it is held generally that a church is not a business, the opinion concludes there is no restriction against erection of a church building on certain lots, and the only meaning of paragraph 3 was to provide a limitation upon the type of residences to be built upon the described lots in these additions.

Considering this argument makes it apparent that the same situation is presented as that appearing in Turk v. Wood, supra, There the plat restrictions provided for the erection of but one residence upon each lot (with certain immaterial exceptions) and also provided that no business of merchandising or manufacturing could be carried on. Certain owners of lots, upon all of which residences had been erected, were using portions of such residences for professional or business offices of different natures.

In an action to enjoin such property owners' use of their residences we denied injunctive relief, upon the grounds that the plat restrictions were against the use of such residences for merchandising, or manufacturing business, and that the property owners were not conducting business in violation of these restrictions, since the buildings were residences, and not used for any purpose contrary to the restrictions.

Under the interpretation relied upon by the majority opinion the restriction of paragraph 3, supra, "In building residences" the construction upon certain specified lots must conform only to certain requirements as to type, size and price. If, as the opinion asserts, this is the correct meaning of the restrictive covenant, then it must also follow that any building which the applicant seeks to erect upon any of the lots reserved for residences of the particular type must conform to these same requirements, as laid down in paragraph 3. Since no covenant can be enlarged by implication or intendment (Syll. 2 of the majority opinion) it cannot be contended that because certain lots were excepted from the restrictions for business purposes, that the church now can join non-restricted lots with those reserved for residences and erect thereon a building which does not conform to the very building requirements which this opinion construes the restrictive covenants to require. Having construed the language of this instrument as a limitation upon, rather than a covenant against the use of certain lots for residence purposes only, then any structure erected upon the lots specifically reserved for residence sites must conform to the requirements mentioned.

I am convinced the majority opinion is wrong in principle, announces a rule of law in conflict with our recent decision in the Macklanburg case, supra, and in any event affirms a judgment which permits erection of a structure which clearly is prohibited by the interpretation of language upon which the opinion is based. I therefore respectfully dissent.

I am authorized to state that WILLIAMS, J., agrees with the views expressed herein.