Virgil H. TROTTER and Mrs. Virgil H. Trotter, Robert L. Vance and Mrs. Robert L. (Pearl) Vance, J. D. Waugerman and Mrs. J. D. (Mercedes) Waugerman, Plaintiffs in Error,

v.

Glen M. and Ethel LOUM, Alton and Violet B. Gillard, Edward M. and Opal Dean Reynolds, Earl E. and Mary Evans, J. W. and Syrene Phillips, Mr. and Mrs. E. L. Wrenicke, Ethan S. and Edna L. Horst, Donald Nucholls, Grace Conkwright, W. B. and Nell Blair, Mr. and Mrs. V. J. Spreckels, Mr. and Mrs. H. T. Hammons, Milford and Ruby Vandiver, Claude M. and L. Alice Steph, Roy E. and Nola Ann Faucett, Defendants in Error.

No. 37635.

Supreme Court of Oklahoma.

Feb. 4, 1958.

652

Hilma Patterson Duey, George P. Striplin, George E. Reeves, Tulsa, for plaintiffs in error.

Wheeler & Wheeler, John Wheeler, Jr., W. B. Blair, Tulsa, for defendants in error.

CARLILE, Justice.

Mr. and Mrs. Virgil H. Trotter, owners of Lot 1, Block 6, Robert L. Vance and Pearl Vance, owners of Lot 6 in Block 6,

and J. C. Waugerman and Mercedes Waugerman, owners of Lot 2 in Block 6, all in Gracemont Third Addition to the City of Tulsa instituted this action in the District Court of Tulsa County against Glen M. Loum, Ethel Loum, et al., owners of all other lots in said addition. The plaintiffs alleged that the deed dated March 9, 1953, dedicating the said addition, restricted the use of the lots for residential purposes only, and further alleged that due to development of adjoining properties for business and increasing traffic noise and hazards it has rendered the properties unfit for residential purposes, and that the restrictions on the use of the lots have been destroyed by the changed conditions and the restrictions are no longer of substantial benefit to the residents of the addition, and prayed that the restrictions be cancelled and held for naught. The defendants filed answer and cross-petition admitting their alleged ownership of lots in the addition and admitted that the use of the lots was restricted to residential purposes only, but specifically denied that there had been a change of conditions which rendered the lots unfit for residential purposes. The defendants alleged in their cross-petition that the plaintiffs were threatening and will, unless restrained, establish business within the addition, contrary to and in disregard of the restrictive covenants, and prayed that the plaintiffs be barred and enjoined from establishing a business in the addition. After defendants filed their answer and cross-petition the plaintiffs dismissed their action and filed a pleading entitled "Answer and Cross-Petition of Cross Defendants", in which they alleged that the allegations in their original petition to the effect that the restrictive covenants restricted the use of the lots in question to residential purposes was an erroneous conclusion of law, contrary to the meaning and effect of the restrictions, and for that reason they dismissed their petition. We will refer to the original plaintiffs as such, although they refer to themselves as cross-defendants.

Plaintiffs further alleged in their answer and cross-petition that the restrictive covenants in the dedication of the addition does not restrict the use of the lots to residence purposes only, and that the plaintiff, Virgil H. Trotter, intends to and will construct a dental office building on Lot 1, Block 6 of said addition for use by himself and for rent to others, and that such use of the lot would not be violative of the restrictive covenants nor constitute a noxious trade or activity constituting an annoyance or nuisance to the neighborhood. The plaintiffs further alleged that if the court should determine that the covenants of dedication restricted the use of the lots against any trade or activity which is not noxious or offensive, and which would not become a nuisance, then said restrictions should in equity and good conscience be cancelled and set aside on the grounds that subsequent to the filing of the deed of dedication the adjoining land on three sides has been infiltrated with growing businesses such as church and hospital properties across the street from the addition and the increased traffic along 21st Street; that the lots have been rendered unfit for an exclusive residence district and the restrictions are no longer of substantial benefit to the resident owners of the lots and they will suffer substantial loss if the restrictions should be enforced, and in conclusion, prayed the court to adjudge and decree that there is no restriction against the use of the lots for any trade or activity which is not noxious or offensive, or a nuisance, and if the court should determine that there are such restrictions that they be cancelled and set aside, and that the defendants' application for an injunction be denied.

The issues were tried to the court, who found that the lots in Gracemont Third Addition are restricted to residential use only and that the proposed construction and use of a building on Lot 1, Block 6, as a dental clinic would be a violation of the restrictive covenants and adjudged and decreed that the original defendants, defendants in error here, have judgment against the plaintiffs, and that the plaintiffs, Mr. and Mrs. Virgil H. Trotter, be enjoined and restrained from erecting and operating

a building for use as a dental clinic on Lot 1, Block 6, in said addition. Motion for new trial was filed by the original plaintiffs, which motion was overruled, and they appeal.

The plaintiffs in error present their assignments of error under two propositions. The second proposition, which we think should be considered first, is to the effect that the purpose and intent of the restrictive covenants in the dedication of the addition here in question cannot be construed to restrict the use of the lots to residential purposes only.

We will first consider plaintiffs' second proposition and determine if the evidence and record support the finding and judgment of the trial court that the lots in the addition are restricted to residential use only. The deed dedicating the addition here involved was filed April 6, 1953, and the addition consists of Block 5 (6 lots) and Block 6 (12 lots). At the time the plaintiffs, Mr. and Mrs. Trotter acquired title to Lot 1, Block 6 in 1955 all of the other lots in the addition were occupied and used as residential lots, with dwellings thereon, vaued at approximately $14,000 to $22,000 each. The lot owned by the plaintiffs, Trotter, was the only vacant lot in the addition, and he testified that he intended and would, unless prevented, erect a building on the lot for use as a dental office or clinic for his own use and for rent to other dentists. The deed dedicating the addition contains substantially the following restrictive covenants:

(A) "All lots in the addition shall be known, described and used as residential lots."

(B) Relates to location of buildings with respect to lot lines.

(C) Not more than one residence shall be constructed on one lot.

(D) Fixes the floor area of one and two story dwellings.

(E) Forbids the use of a trailer, tent, barn, outbuilding for use as a residence.

(F) "No noxious or offensive trade or activity shall be carried on upon any lot, nor shall anything be done thereon which may be an annoyance or nuisance to the neighborhood."

(G) Prohibits fences, except ornamental, and fixes location.

(H) Forbids driveway approaches on certain lots in Block 6 from entering on 21st Street.

(I) Provides that the covenants shall be binding until February 27, 1968, at which time they shall be automatically extended for ten years unless a majority of the lot owners agree to change the covenants in whole or in part.

Plaintiffs in error assert under their second proposition that by reason of paragraph (F) the only business prohibited in the addition is business that would be noxious or offensive or an annoyance or nuisance to the neighborhood, and that since the court found that the dental office proposed to be constructed was not such a business the injunction should have been denied. We are unable to agree with such contention, but we do agree that restrictions on the free use of real property will not be aided or extended by implication or enlarged by construction.

"Restrictions on the use of real property must be strictly construed, and will not be extended on the one hand or limited on the other, but strictly enforced in a proper case.

"The language 'all buildings in said addition shall be for residence purposes only' contained in the plat restrictions covering an addition to a city, restricts the use of residences constructed in said addition solely to residential purposes where there is no provision in the restrictions modifying or qualifying such language." Mattson v. Fezler, 202 Okl. 589, 216 P.2d 275.

Christ's Methodist Church v. Macklanburg, 198 Okl. 297, 177 P.2d 1008, holds:

"Covenants restricting the use of real property, though not favored, will nevertheless be enforced by the courts, where the intention of the parties in

their creation is clear, and the restrictions or limitations are confined within reasonable bounds."

West Nichols Hills Presbyterian Church v. Folks, Okl., 276 P.2d 255, 256, holds:

> "A restriction stating that 'the following lots are restricted to residence only' is clear and explicit in excluding the use of the lots for any other purpose than residential, and the use of the lots for free parking of automobiles for those attending a nearby church is clearly excluded by the terms of the restrictions."

Restriction (A) in the case at bar provides "All lots in the addition shall be known, described and used as residential lots." In Southwest Petroleum Company v. Logan, 180 Okl. 477, 71 P.2d 759, 761, the restriction on the lots there in question was "for residences only" and "for dwellings only", and the opinion states that both terms would be considered synonymous, and that the phrase "all lots in this plat are restricted to residences only" excludes all other uses upon the land and is clear and unambiguous. Christ's Methodist Church v. Macklanburg, supra, likewise holds that the phrase "all lots in this plat are restricted to residences only" is clear and explicit in excluding the use of the lots for any purpose other than residential. In the case of Vaughn v. Lyon, 122 Okl. 179, 252 P. 1088, the court gave effect to a restriction upon a certain addition to the City of Tulsa, which provided that the real estate "shall not be used for other than residence purposes" and enjoined the use of said premises for hospital purposes.

The holdings in the preceding cases are applicable to the language used in the restrictions in the case at bar.

Counsel for plaintiffs in error assert that it was necessary for the court to add the word "only" to restriction (A), and ignore restriction (F) in order to construe the restrictions to mean that the lots were restricted to use for residential purposes only. We think a fair construction of the language embodied in restriction (A) impels the conclusion that the lots were to be used solely for residential purposes, and that it is unnecessary to use the word "only" to express such purpose. Addition of the word "only" at the end of restriction (A) would tend to emphasize the preceding language which expresses the intent of the dedicator to limit the use of the lots to residential purposes, but would not modify or change the meaning of the language used.

Restriction (C) provides that not more than one residence shall be constructed on a lot, and indicates a purpose to restrict the use of the lots to residences only. Since all of the lots are restricted to use as residential lots it follows that they cannot be used for some other purpose. In the case of Vaughn v. Lyon, supra, the restriction there provided that the property "shall not be used for other than residence purposes" and did not contain the word "only", but the court enjoined the use of the premises except for residence purposes.

The plaintiffs in their original petition alleged that the deed of dedication restricted the use of the lots to residential purposes, but in their subsequent pleadings repudiated that allegation and said it was an erroneous conclusion of law. Plaintiffs contend that by reason of restriction (F) only noxious or offensive business or an annoyance or nuisance to the neighborhood is prohibited.

The context and meaning of the restrictions as a whole should be considered in arriving at a proper construction of the same. Restriction (F), when considered in connection with the others, cannot be construed to nullify or abrogate the language of the restrictions which plainly restrict the use of the lots for any other purpose than residential. The West Nichols Hills Presbyterian Church v. Folks, supra, was an action seeking an injunction to prevent a lot owner from using its lot in violation of a plat restriction. The opinion states in part as follows:

> "The defendant asked that if the dedicators had intended that the lots be used for residence purposes only, why were numerous things mentioned for which they could not be used?

"That appears to be a pertinent question, but we are bound to give effect to the clear and unambiguous language to the effect that certain lots named shall be used for residence only. This provision is clear and must be given its intended meaning."

And syllabus 3 holds:

"Where only specified uses of property are prohibited, the use of the land for a purpose not so prohibited does not nullify plat restrictions, but where restrictions provide that land shall be used for a single purpose only, use for any other purpose is prohibited."

■■ The fact that the dedicator of the addition in the case at bar owned land adjoining the addition, which he subsequently sold without any restriction thereon, is not sufficient to show an intent and purpose contrary to that plainly expressed in the deed of dedication. In Turk v. Wood, 202 Okl. 112, 210 P.2d 662, 665, the opinion quotes with approval as follows:

"In 26 C.J.S., Deeds, § 163, * * * it is said: 'The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms, even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written.'"

We have considered the authorities cited and relied on by the plaintiffs in error in support of their second proposition and do not find them applicable or controlling under the facts and record in the case at bar. Plaintiffs' second proposition is not supported by the evidence, and we find the construction by the trial court holding that the restrictions in question limit the use of the lots involved to residential purposes only is supported by the evidence and record.

■■ The first proposition presented by plaintiffs in error is in substance that if the restrictions on the use of the lots in the addition involved be construed to limit the use thereof to residence purposes only, then because of changes in surrounding property and neighborhood the original purpose has been destroyed as to the North half of Block 6, without fault of plaintiffs, and that it will be inequitable and oppressive to enforce the restrictions as to it and of no substantial benefit to the residents of the other lots in the addition. In support of their proposition they cite the case of Southwest Petroleum Co. v. Logan, supra, which holds:

"In determining whether a court of equity should refuse to enforce valid restrictions on the use of real property because of change of conditions of the surrounding property, the test is whether the original purpose and intention of the parties creating the restrictions has been so destroyed by the changed conditions, without fault on the part of those who seek to be relieved, that the restrictions are no longer of substantial benefit to the residents, and the original purpose cannot be reasonably effected by granting equitable relief. Each case must be decided on the equities as they are presented."

All the lots in the addition, except Lot 1, Block 6, which is vacant and owned by the plaintiffs Trotter, were at the date of trial occupied as residences, and no material change had taken place within the addition since its dedication except the construction of dwellings. Plaintiffs' evidence showed that traffic had increased in the vicinity of the addition since its creation, and especially along 21st Street, on which the north half of Block 6 abutted, and a corresponding increase in noise occurred.

Plaintiffs' evidence further showed that a church had been constructed across the street and east of the addition; that a hospital of 250 or more rooms was proposed to be erected on 28 acres of ground located across the street from the addition; that there was in course of construction a large store building to be occupied by a national chain store located on 17 acres of ground directly north across the street from the

addition; that a Fair Grounds, on which was located a ball park and race track, was located a distance of one-fourth to one-half a mile from the addition; that there was a business center located about a block west of the addition. Some of the buildings referred to had been constructed prior to the creation of the addition in question, while others had been erected since, and the proposed hospital referred to had not reached a construction stage. There was evidence to the effect that the traffic was heavy, especially along 21st Street, at certain periods of the morning and evening, as was the situation in other parts of the city at that time, and some of the plaintiffs testified that by reason of the traffic they found it difficult to get in and out of their driveways.

Mr. Vance, one of the plaintiffs and owner and occupant of Lot 6, Block 6, of the Addition, testified that at the time he purchased the lot and residence thereon in 1953 there was a golf course across the street from the addition and he bought his residence with the view of playing golf on the course; that the traffic and noise had increased since he purchased his property; that the church east of his lot had been erected since he purchased his lot, and that there was much open territory around the addition when he first became a resident there; that he desired to have the restrictions removed, and answered in the affirmative when he was asked if he proposed to sell his property for business in order to get more money out of it.

Mrs. Waugerman, one of the plaintiffs, and owner of Lot 2 in Block 6, which adjoins the vacant lot owned by the defendants Trotter, testified that she and her husband purchased the lot as a residence in July, 1954 at a cost of $15,000; that there had been an increase in traffic between the time she purchased the lot and the date of the trial. She was asked by the trial court why she wanted the property re-zoned, and stated that it would be more profitable to sell than living in it.

Mr. Phillips, owner and occupant of a lot in the addition, testified that he did not object to the construction of the building proposed by the plaintiffs Trotter on their lot, but further stated that the lots were very desirable for residential purposes.

Mrs. Glen Loum, owner and resident of Lot 3, Block 6, testified that she desired the property zoned for business; that they bought the property for a residence, but because of the expansion of business things had changed.

Mr. Evans, one of the defendants, a lot owner and resident of the addition, testified that he was an auto mechanic, regularly employed as such at a downtown garage, and that he had on occasions—not often—done some auto work with hand tools at his residence for some of his neighbors; that he relied on the plat restrictions when he bought his lot and desired to maintain the restrictions.

Mr. Blair, one of the defendants and a lot owner in the addition, testified that he wished to maintain the plat restrictions against the use of the lot except for residence purposes; that his wife had an uptown studio where she taught music; that she also taught a few pupils at her residence. No objection to such limited use of the property by the defendants, Evans and Blair, was shown to have been made by any of the residents of the addition, and it is not apparent that such limited use affected or changed the status of the property.

Mr. Gilliland, a lot owner and resident of the addition, testified that the houses in the addition were well kept and desirable for residences, and that he desired to continue occupying his lot as a residence.

Mr. Reynolds, owner of Lot 5 in Block 6 of the addition, testified that he paid $20,-500 for his lot in September, 1955, and that he added about $1,000 worth of improvements; that the addition is desirable for residential purposes and he intended to continue occupying it as such; that he was aware of the restrictions in the dedication when he purchased the property; that he lived on 21st Street, but that he experienced no difficulty in getting to and from his work; that noise did not make his prop-

erty unsuitable for residence purposes. Several other property owners and residents of the addition testified that the addition was desirable for residential purposes and that they desired to retain it as such and were opposed to any business in the addition.

A number of photographs of the dwellings in the addition and the grounds surrounding the same were introduced in evidence. The plaintiffs in error make the statement in their brief with respect to the addition that its main value is, and its value from now on will obviously and necessarily be for business. The trial court apparently did not accept such theory, but on the contrary held that the lots were suitable and valuable for residential purposes, and that the restrictions on the use of the property were still of benefit to the property owners. There was no direct evidence that the lots in question were, or would be, of greater value for business purposes than for residences. Even if the value of the lots for business purposes were greater than for residence purposes that would not be sufficient to warrant vacating the restriction against use other than residential. Such was the holding of this court in Van Meter v. Manion, 170 Okl. 81, 38 P.2d 557, 560, in which the court quotes with approval from Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545, as follows:

"On the other hand, the mere fact that, because of changed conditions in the adjacent territory, land so restricted to residential use will sell for more money for other uses does not signify the purpose of the restrictions has been defeated. If it continues to be reasonably fit for the contemplated residential use, and is so used, the circumstance that it can be sold at a higher price freed of the restrictions simply means each home-owner has a heavier investment in his property." (Citing cases.)

The opinion also holds:

"The fact that traffic has increased on streets surrounding a restricted area may be considered as evidence showing a change of conditions, but is not sufficient to warrant the releasing of affected property from a restrictive covenant."

Plaintiffs in error rely on the holding in Wood v. Knox, Okl., 277 P.2d 982, 983, in which this court affirmed the judgment of the trial court denying injunction to enforce restrictions against the use of the North half of a block located in an addition where the dedication restricted the use of the lots to residential purposes, and sustained the restrictions as to the remainder of the addition. A comparison of facts in that case, as recited in the opinion, with the facts and record in the case at bar shows a material difference between them by reason of which a different conclusion and holding in each case is justified. The opinion in that case states in part:

"* * * the trial court found that by reason of changed conditions inside and outside the addition the property in question has been destroyed for residential purposes."

No such finding is made in the case at bar. On the contrary, the trial court found generally in favor of the defendants in error and against the plaintiffs, which constitutes a finding of all facts necessary to sustain the judgment of the court. Jenkins v. Abercrombie, 204 Okl. 213, 228 P.2d 657. Wood v. Knox, supra, also announces the well established rule that in a case of purely equitable cognizance the decision of the trial court on the evidence will not be reversed unless against the clear weight thereof. We do not find the judgment of the trial court in the present action to be against the clear weight of the evidence.

We have considered the evidence and record in the case at bar and the propositions presented by the plaintiffs in error and find that the restrictive provisions in the deed dedicating Gracemont Third Addition are not ambiguous and clearly restrict the use of the lots in the addition exclusively to residence purposes, and it follows that the trial court correctly held that the pro-

posed construction and use of a building on Lot 1, Block 6 of the addition as a dental clinic would be a violation of the restrictive covenants contained in the deed of dedication.

We are also of the opinion that the plaintiffs in error failed to establish their allegation and claim that the restrictions involved should not be enforced, especially with respect to the north half of Block 6 in said addition, because of changed conditions in the surrounding property and neighborhood. The denial of such claim by the trial court is in accord with the evidence and the law.

Judgment of the trial court is affirmed.

CORN, V. C. J., and DAVISON, HALLEY, WILLIAMS and BLACKBIRD, JJ., concur.

JOHNSON, J., dissents.