L. A. BUMGARNER and Iris Bumgarner, Plaintiffs in Error,

v.

DeWayne PRUITT, Defendant in Error.

No. 41463.

Supreme Court of Oklahoma.

Dec. 20, 1966.

Charles E. Grounds, Seminole, for plaintiffs in error.

Stevenson, Huser & Huser, by Stanley Huser, Jr., Holdenville, for defendant in error.

IRWIN, Justice.

Plaintiffs in error, herein referred to as plaintiffs, commenced proceedings against defendant in error to enjoin and restrain him from constructing a barn on a certain lot in violation of the restrictive covenants contained in the dedication deed. A temporary restraining order was issued. On hearing, the trial court determined the issues in favor of defendant, dissolved the temporary restraining order, and rendered judgment for defendant. Plaintiffs appeal from the order overruling their motion for a new trial.

## FACTS

The lot on which defendant started the construction of his barn is in a subdivision consisting of six lots located about two miles north of the City of Seminole, and was platted into a subdivision by the plaintiffs in 1960. Defendant, by mesne conveyances, acquired title from plaintiffs to Lots 2 and 3 of the subdivision, and title to the four remaining lots is still vested in plaintiffs.

Defendant built his home on Lot 2 and had begun the construction of the barn on Lot 3 when this proceeding was instituted. The lots contain about two acres each. Plaintiffs' home joins the subdivision and the only structures located in the subdivision are defendant's home and the barn he started to construct.

At the time of the platting of the subdivision, plaintiffs prepared and caused to be placed of record the following "Protective Covenants" pertaining to the subdivision. Omitting the purpose clause, they are:

1. All lots within the subdivision shall be known and designated as residential building plots. No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling not to exceed two and one half stories in height and a private garage for not more than two automobiles and other out buildings incidental to residential use of the plot.

2. No business, trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

3. No trailer, basement, tent, shack, garage, barn or other outbuilding erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

4. * * *.

5. The keeping, boarding or breeding of dogs, cats or other pets on a commercial basis shall not be permitted within this subdivision.

The other provisions of the protective covenants are not germane to this discussion, so need not be set out here.

Defendant readily admitted that plaintiffs placed certain restrictions on the use of the platted lots and that he was in the process of building a barn on Lot 3 when this case was filed.

## CONCLUSIONS

Plaintiffs argue that paragraph 2 of the restrictions definitely restrict the conducting of any business, trade or activity, and paragraph 5 restricts the keeping, boarding or breeding of pets on a commercial basis upon any lot. Although such restrictions do relate to such activities, the only activity or conduct that plaintiffs sought to enjoin or restrain was the building of the barn, nothing more and nothing less, and this is the only issue presented to and determined by

the trial court. This is brought clearly into focus in defendant's brief wherein he states: "The real issue is simply, do the restrictive covenants prohibit defendant from building a barn on the property? This is the only issue raised. This is the only issue tried."

In Mattson v. Fezler, 202 Okl. 589, 216 P.2d 275, an action was brought to permanently enjoin the use of certain property for business purposes in violation of the plat restrictions. In affirming the judgment of the trial court granting the injunction, we held that restrictions on the use of real property must be strictly construed, and will not be extended on the one hand or limited on the other, but strictly enforced in a proper case. We further held:

"The language 'all buildings in said addition shall be for the residence purposes only' contained in the plat restrictions covering an addition to a city, restricts the use of residences constructed in said addition solely to residential purposes where there is no provision in the restrictions modifying or qualifying such language."

In Christ's Methodist Church v. Macklanburg, 198 Okl. 297, 177 P.2d 1008, we held:

"Where, in pursuance of a plan, a section of an addition is designed to be purely residential in character and, in order to make it more attractive as such, the use of the lots therein is by the terms of the plat and dedication restricted to residential purposes, held, such restriction is not unreasonable in contemplation of law."

In Trotter v. Loum, Okl., 321 P.2d 651, we said the context and meaning of the restrictions as a whole should be considered in arriving at a proper construction of the same.

Paragraph 1 of the restrictions designates all the lots as residential building plots and authorizes the construction of "a private garage for not more than two automobiles and other out buildings incidental to residential use of the plot." Paragraph 3 does not restrict the erection or construction of a "garage, barn or other out building" but prohibits such buildings from being used as a temporary or permanent residence. As heretofore set forth, how the barn will be used or is being used is not an issue in these proceedings, as the only issue presented is whether the restrictive covenants prohibit the building of a barn on the premises.

In determining this issue, the context and meaning of the restrictive covenants in the dedication deed should be considered as a whole and effect should be given to the intention of the dedication deed and considered in connection with the circumstances surrounding the dedication and the object sought to be accomplished.

Since the restrictive covenants do not prohibit the erection of a barn, but in effect, recognize that a barn or other out buildings may or will be erected, we can only conclude that the dedication deed does not restrict the erection and construction of the barn in the instant proceeding.

Judgment affirmed.

DAVISON, WILLIAMS, BLACKBIRD and LAVENDER, JJ., concur.

HALLEY, C. J., JACKSON, V. C. J., and BERRY and HODGES, JJ., dissent.

HALLEY, Chief Justice (dissenting).

I cannot concur in the majority opinion. It seems to me that the result reached there is entirely inconsistent with our views as set forth in other decisions.

We have heretofore committed ourselves to the rule that restrictions on the use of real property must be strictly construed and will not be extended on the one hand or limited on the other, but strictly enforced in a proper case. See Cooke v. Kinkead, 179 Okl. 147, 64 P.2d 682; Test Oil Co. v. La Tourette, 19 Okl. 214, 91 P. 1025, and Mattson v. Fezler, 202 Okl. 589, 216 P.2d 275.

We have also held that the provisions of a restrictive covenant apply to the use that is

to be made of property as well as to the type of a structure to be erected. See Mattson v. Fezler, supra.

Here defendant was in the process of constructing a barn on one of the two lots owned by him when this proceeding was instituted. The record is clear that defendant planned to keep and raise horses on the lot where the barn was to be built and that the barn was for his horses. This is, of course, one of the common, ordinary and customary uses for which a barn is intended.

I agree with the majority view that the only issue in this case is whether or not the restrictive covenant prohibits the building of a barn on the premises, but I cannot agree that we must ignore the prospective use that will be made of the barn in determining the answer to the issue above stated. To do so would seem to me to be illogical. Some use is going to be made of the barn by the defendant. A person does not expend his time, energy and money in the construction of a structure for which no use is intended.

Restriction No. 1 of the covenant in question is as follows:

1. All lots within the subdivision shall be known and designated as residential building plots. No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two automobiles and other out buildings incidental to residential use of the plot.

To me it is clear that the above covenant means exactly what it says. The lots in the subdivision are designated as residential building plots. Only a single family dwelling, a garage and other outbuildings incidental to residential use shall be placed on a lot within the subdivision. By no stretch of the imagination or fuzzy thinking could a barn ever be classified as a single family dwelling or even an "out building"

incidental to a residential use. Webster's New International Dictionary, second edition, defines a barn as follows: A covered building used chiefly for storing grain, hay, and other farm products. In the United States a part of the barn is often used for stables, sties, etc.

In my view the provisions of the restrictive covenant set out above positively prohibit the construction of a barn on any lot in the subdivision.

Restriction No. 2 of the covenant in question provides as follows:

2. No business, trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

Again I think this restriction is clear. No commercial activity can be carried on upon any of the lots in question. Defendant, in his testimony stated that he planned to sell his horses from time to time and purchase other horses, also for sale purposes. Here again it appears clear to me that the use which defendant plans to make of the premises and the barn would violate the provisions of the restriction above set out.

Restriction No. 3 of the covenant in question is as follows:

3. No trailer, basement, tent, shack, garage, barn or other outbuilding erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

The contention is made, with respect to this restriction, that the dedicators contemplated that such structures, as set out above, would be built on the premises, and that this would be permissible, as long as the enumerated structures would not be used as a residence. This same argument has been made before, principally in the case of Trotter v. Loum, Okl., 321 P.2d 651, wherein this court rejected the above contention, using the following language:

"The West Nichols Hills Presbyterian Church v. Folks [Okl., 276 P.2d 255],

supra, was an action seeking an injunction to prevent a lot owner from using its lot in violation of a plat restriction. The opinion states in part as follows:

'The defendant asked that if the dedicators had intended that the lots be used for residence purposes only, why were numerous things mentioned for which they could not be used? That appears to be a pertinent question, but we are bound to give effect to the clear and unambiguous language to the effect that certain lots named shall be used for residence only. This provision is clear and must be given its intended meaning.' "

The majority view herein, departs from the above well reasoned rule, and would permit the construction of a barn on the premises, on the basis of Restriction No. 3 and the language contained therein. I feel that such reasoning is strained and is not supported by authority, in our state or elsewhere.

My research on this question reveals that the courts of Texas and Connecticut have had an occasion to pass on similar questions. In the case of Timms v. Griffith, 68 S.W.2d 535, Texas, 1943, the Court of Civil Appeals held that the purchaser of a lot, the use of which was restricted to "residence purposes" could not erect a stable and keep horses on the adjoining lot acquired through a conveyance containing the same restriction. A similar finding was made in the case of Pagliaro v. Severson, 22 Conn.Sup. 82, 160 A.2d 491 (1960).

In my opinion, a consideration of the restrictive covenants in the dedication deed in this case, as a whole, and giving effect to the intention of the dedication deed leads to no conclusion other than that the use of the premises, as contemplated by the defendant, and as approved by the majority opinion, would constitute a violation of the provisions of the restrictive covenants.

I therefore respectfully dissent.

I am authorized to state that BERRY and HODGES, JJ., concur in the opinion herein expressed.